MICHAEL J. O'HANLON, RELATOR, v. JAMES C. CALVERT, CLERK OF THE COUNTY OF UNION, ET AL., RESPONDENTS.

Argued October 14, 1915—Decided October 19, 1915.

1. *Mandamus* is the proper remedy by which to compel a statutory officer to comply with a statutory regulation.
2. *Mandamus* is the proper remedy by which to compel a county clerk to print the ballots to be used at a general election so that no names shall appear thereon as candidates for an office that is non-existent by direct statutory enactment; and this is so, notwithstanding that the city clerk, in violation of such statutory enactment, printed such names upon the ballots used at the primary election, the results of which have been certified to the county clerk.
3. The act of April 9th, 1913 (*Pamph. L., p.* 656), which provides that the governing body of every city of the second class having a board of public works shall consist of one member for each ward is a constitutional statute—
    (1) Upon the authority of *Attorney-General* v. *McKelvey*, 78 *N. J. L.* 621.
    (2) Under the rule laid down in *Attorney-General* v. *McGuinness*, 78 *N. J. L.* 346, approved in Attorney-General *v.* McKelvey and followed in *Hudspeth* v. *Swayze*, 85 *Id.* 592.

On rule to show cause why a *mandamus* should not issue.

Chapter 325 of the laws of 1913, approved April 9th, 1913 (page 656), by its first section, provides that in every city of the second class in which there is now or shall hereafter be created a board of public works, the governing body of such city by whatever name designated shall consist of one member in and for each of the wards of such city, who shall be elected in the same manner and for the same terms as shall be provided by the city charter or other laws governing such elections.

The city of Elizabeth is a city of the second class in which a board of public works was created in 1914.

The city has twelve wards, and has at the present time two councilmen from each ward, the terms of twelve of which ex-

pire on January 1st, 1916. The terms of the other twelve do not expire until January 1st, 1917, and if effect be given to the act of April 9th, 1913, these twelve from and after January 1st, 1916, will constitute the city council made up of one member from each ward. To accomplish this statutory result no person should be voted for or elected to fill the office of any of the twelve councilmen whose terms expire on January 1st, 1916. Petitions for nominations to fill such offices were accepted by the city clerk and the names of the candidates printed upon the tickets used at the primary election held on September 28th, 1915, at which various persons were nominated and certified by the boards of election to the city clerk, who in turn certified them to the county clerk, which latter officer has informed the relator, in writing, that he "will print the names of such nominees on the official ballots for the general election to be held November 2d, 1915, unless otherwise directed by order of the court," whereupon this rule to show cause was allowed.

Before Justices GARRISON, TRENCHARD and BLACK.

For the relator, *Frederick J. Faulks* (*James C. Connolly, C. Addison Swift, John J. Stamler, Samuel Koestler,* on the brief).

For the respondents, *Gilbert Collins* (*Frank E. Bradner* on the brief).

The opinion of the court was delivered by

GARRISON, J. If effect is given to the act of April 9th, 1913, the ballots printed for use at the election to be held on the 2d day of November next, must not contain the name of any candidate for city councilman in the city of Elizabeth. Such is the provision of such act of the legislature. Upon the authority of the decision in *Lang* v. *Bayonne,* 74 *N. J. L.* 455, the city clerk was and the county clerk is bound to accept that statute as a valid act of legislation binding upon them. The gist of that decision is: "The provisions of a solemn

act of the legislature, so long as it has not received judicial condemnation, are binding upon the citizen."

The objections that are now urged against the use of the writ of *mandamus* to compel the county clerk to obey this statute amount therefore to this: That the city clerk by violating this rule of law may justify the county clerk in a like violation and thereby place it beyond the prerogative power of this court to arrest such second violation by the mandate of its peremptory writ commanding a statutory official to comply with a statutory requirement. If such were the law, it would be as unwholesome in principle as it would be intolerable in practice. *Mandamus* lies.

Upon the present application we are required by reason of our judicial office to do what the city and county officials are not authorized to do, viz., to determine whether the act of 1913 is an unconstitutional enactment. The shortness of the time between the argument of this case and the election day makes promptness of decision of far more importance than the form in which such decision is cast. I shall, therefore, merely suggest in the briefest possible way the grounds upon which we hold the act in question to be constitutional.

The case of *Attorney-General* v. *McKelvey, 78 N. J. L.* 623, is authority for the doctrine that in legislation relating solely to the structure and machinery of government cities may be classified upon the basis of their population according to the discretion of the legislature. If an illusive subclassification be made the statute will not be saved by the fact that it concerns the machinery of government, but if such subclassification is based upon a substantial criterion germane to the subject of legislation, and hence not illusory the circumstance that such legislation is limited to cities of a certain population will not render it unconstitutional if it relate solely to the structure and machinery of government.

In the present case, the criterion of the subclassification, viz., the existence of a board of public works, is a substantial one strictly germane to the subject of the legislation, viz., the reduction of the number of city councilmen; the act, there-

fore, is not unconstitutional because it applies only to cities of the second class.

Having reached this conclusion, we are, of course, of the opinion that such a view was one that it was permissible for the legislature to hold. If it was, the act must be sustained upon the rule laid down in the case of *Attorney-General* v. *McGuinness,* 78 *N. J. L.* 346, which was approved by the Court of Errors and Appeals in Attorney-General *v.* McKelvey, and followed by that court in the recent case of *Hudspeth* v. *Swayze* (Chancellor-Sheriff-Jury case), 85 *Id.* 592.

The contention that the second section of the act is not within its title does not require present consideration; the provision of that section is either incidental to the main object of the act or extraneous thereto; if the former, it is within the title; if the latter, it is susceptible of excision.

The argument that effect cannot be given to the act or that its classification is illusory because the term "a board of public works" is not legislatively defined is without substance. On the same day the legislature provided, by chapter 326, for the creation of a board of public works in any city of the second class that adopted such provision upon a referendum to its voters. In this act the powers and duties of the body thus created and denominated are legislatively defined. Elizabeth has adopted this act.

For present purposes, therefore, the words used in the present act are sufficiently defined to serve as a basis of classification; what cities come within this class would, I apprehend, depend not upon a mere question of nomenclature, but upon the existence of a body having substantially similar powers; all such are within its scope without regard to nomenclature. It is not a question of play upon words.

In conclusion, nothing that has been advanced in the argument of respondents' counsel has convinced us that chapter 325 of the laws of 1913 is not a constitutional statute, or that the county clerk should not in the printing of the ballots be required to give effect to it.

To this end a peremptory writ of *mandamus* will issue in accordance with the prayer of the relator's petition and the

rule to show cause allowed thereon; nothing in our conclusion, however, has any reference to the filling of the vacancy in one of the wards occasioned by death.