116 S.E.2d 398 (1960)
STATE of West Virginia ex rel. Moneth W. ZICKEFOOSE et al.
v.
Garland WEST et al.
No. 12039.
Supreme Court of Appeals of West Virginia.
Submitted June 21, 1960.
Decided July 12, 1960.
Dissenting Opinions July 19 and August 23, 1960.
Concurring Opinion October 18, 1960.
*399 Hyer, Gibson & Talbott, Elkins, for relators.
*400 Kelcel M. Ross, Buckhannon, Wysong & Wysong, Webster Springs, for respondents.
CALHOUN, Judge.
This original proceeding in mandamus was instituted in this Court in the name of the State of West Virginia at the relation of Moneth W. Zickefoose and Roy L. Warner, voters and residents of Upshur County, for the benefit of themselves and all other residents and voters of that county, against Garland West, Lester Hildreth and Gloris L. Darnall, constituting the board of ballot commissioners of Upshur County, and Eugene Charles Suder.
The petition alleges that Eugene Charles Suder is the Republican nominee for sheriff of Upshur County; that by reason of the provisions of Article IX, Section 3 of the Constitution of West Virginia, he is not eligible to be elected to the office for which he has been nominated; and the petition therefore prays that the board of ballot commissioners be commanded to omit his name from the official ballot for the general election to be held on November 8, 1960.
Harley V. Tenney was elected sheriff of Upshur County at the general election held in November, 1956, and on January 1, 1957, he assumed the duties of the office for the four-year term to which he was elected, which will expire on December 31, 1960, and he is now continuing to serve as such sheriff. Eugene Charles Suder was duly appointed as one of the deputies of Sheriff Charles V. Tenney, qualified as such, assumed the duties of the office at the commencement of the term on January 1, 1957, and continued to serve as such deputy sheriff until his resignation became effective December 31, 1959.
Thereafter Eugene Charles Suder became a Republican candidate for nomination as sheriff of Upshur County for the regular four-year term which will commence on January 1, 1961. In the primary election held on May 10, 1960, he received the highest number of votes among the Republican candidates for sheriff, and, accordingly, he was duly declared to have been nominated.
The members of the board of ballot commissioners have filed an answer to the petition wherein they admit that Garland West and Lester Hildreth are the duly constituted ballot commissioners; and that Gloris L. Darnall is the duly elected and qualified clerk of the circuit court, and, as such, chairman of the board of ballot commissioners of Upshur County. In the answer they "neither admit nor deny" other allegations of the petition.
Eugene Charles Suder has filed an answer in which he admits many of the pertinent allegations of the petition, but denies none thereof. The answer states several propositions as follows: (1) Suder is eligible to be elected because of his resignation in advance of the expiration of the present sheriff's term; (2) any challenge of Suder's eligibility is premature in advance of his election; (3) any challenge of his eligibility is premature until Sheriff Harley V. Tenney shall have completed his present term; and (4) the relators should be denied the relief they seek herein because of their failure to appear before the board of canvassers to register protest prior to the declaration of the result of the canvass. The pertinent facts not being in dispute, the case was submitted for decision upon the agreed state of facts appearing from the petition and answers.
Article IX, Section 3 of the Constitution of West Virginia, so far as material to this case, is as follows: "The same person shall not be elected sheriff for two consecutive full terms; nor shall any person who acted as his deputy be elected successor to such sheriff, nor shall any sheriff act as deputy of his successor; nor shall he, during his term of service, or within one year thereafter, be eligible to any other office." (Italics supplied.) In the case of Gorrell v. Bier, 15 W.Va. 311, the Court held that a sheriff who had completed the serving of one full term was not disqualified to be elected two years later to a two-year unexpired term as *401 sheriff, in view of the fact that the language of the Constitution prohibits only "two consecutive full terms." (Italics supplied.) We are unable to find any other decision of this Court construing the constitutional language which is quoted above. The basic question presented herein is, therefore, apparently one of first impression.
The case of State ex rel. Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302, involved a mandamus proceeding against a county board of ballot commissioners to require such board to reconvene and to strike from the general election ballot the names of two persons appearing thereon as Democratic candidates on the ground that they were not legally nominated as such. In the first point of the syllabus the Court held: "A citizen, taxpayer and voter has such interest as entitles him to maintain mandamus to compel a board of ballot commissioners to discharge their duties lawfully in respect to the preparation of ballots for a general election." In the body of the opinion the Court, after holding that the two persons had not been nominated lawfully, stated:
"* * * If one regularly and legally nominated is omitted from the ballot, on showing compliance with the law on his part he may by mandamus require the ballot commissioners to perform their duty to put his name on the official ballot, though this would call for a reconvening of the board to discharge their duty lawfully. Frantz v. County Court, 69 W.Va. 734, 73 S.E. 328; State ex rel. Heironimus v. Town of Davis, 76 W.Va. 587, 85 S.E. 779; State ex rel. Lamb v. Board of Ballot Commissioners, 97 S.E. 284, decided at this term.
"But can the board of ballot commissioners be compelled to undo what according to the admitted facts they have undertaken to do unlawfully? We think there can be no doubt of the power of the court to control their action. They have no judicial discretion in the premises. At the time the writs were awarded they still had time to make up and print the ballots in accordance with law. Until they have performed their duties lawfully, in contemplation of law they have not performed them at all. Mandamus lies to compel election and other ministerial officers to perform legally their official duties. Boggess v. Buxton, 67 W.Va. 679, 69 S.E. 367, 21 Ann.Cas. 289; Rider v. County Court, 74 W.Va. 712, 82 S.E. 1083; State ex rel. Heironimus v. Town of Davis, supra; Frantz v. County Court, supra."
Our research fails to disclose that this case has been overruled in any respect.
In the case of State ex rel. McKnight v. Board, 86 W.Va. 496, 103 S.E. 399, the Court held in the single point of the syllabus that when a candidate for a nomination in a primary election files a certificate with the clerk of the circuit court from which it appears that he is eligible to hold the office for which he is a candidate, the board of ballot commissioners has "no authority to institute an inquiry for the purpose of determining the question of his legal qualifications to hold such office." The same result was reached in State ex rel. Harwood v. Tynes, et al., etc., 137 W.Va. 52, 70 S.E.2d 24.
In State ex rel. Schenerlein v. City of Wheeling, W.Va., 108 S.E.2d 788, 789, the city clerk in his capacity as ballot commissioner, undertook an independent inquiry to determine, and consequently did determine, that the relator lacked residence qualifications to become a candidate for city councilman. The Court, following the language of the two cases cited immediately above, held that "the city clerk acting as a ballot commissioner has no authority to institute an inquiry for the purpose of determining the question of his legal qualifications to hold such office." The Court further held that mandamus would "not lie to compel the performance of an illegal or unlawful act". A dissenting opinion was filed in that case, in which two members of *402 the Court who joined therein undertook to express their difficulty in reconciling the majority opinion with the decision of the Court in the previous case of Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127. The majority opinion, however, did distinguish the Londeree case on the ground that in that case the city clerk as ballot commissioner "had already placed the name of Londeree on the ballot as a candidate for mayor" and, in this respect, had acted properly and "performed his proper duty under the law." While the Londeree case was distinguished in this manner, it was not specifically overruled or qualified in any respect but apparently it was approved.
The case of Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127, which has been referred to above, was an original proceeding in mandamus to require the ballot commissioners of the City of South Charleston to strike from the ballot the name of Joseph W. Londeree, Democratic candidate for mayor, and to require the county registrar of voters to strike Londeree's name from the voters' registration records, on the ground that he lived on the United States Naval Reservation located within that city. The petition alleged that under such circumstances Londeree was not qualified to be registered as a voter, and that, therefore, he was not eligible to hold the office of mayor. In the fifth point of the syllabus, the Court held that Londeree was not disqualified to vote or to hold office merely because of his residence within the Naval Reservation. There was a dissenting opinion to that part of the majority opinion which is summarized in the third, fourth and fifth points of the syllabus, all of which relate to the single question of Londeree's right to vote and to hold the office of mayor.
In the body of the opinion in the Londeree case [139 W.Va. 748, 83 S.E.2d 131], the Court distinguishes State ex rel. Harwood v. Tynes, supra, and State ex rel. McKnight v. Board, supra, as follows: "The question involved there, however, related to the jurisdiction of the board of ballot commissioners to determine the qualification of a candidate in a primary election, where the certificate of candidacy was regular and showed on its face that the candidate was qualified to hold the office for which he sought the nomination. No jurisdiction to determine such question was vested in the board of ballot commissioners by any statute. Therefore, it had no jurisdiction to make any independent investigation in order to determine such qualification. But lack of jurisdiction of such a board cannot be determinative of jurisdiction of a court having original jurisdiction in mandamus." (Italics supplied.) The charter of the City of South Charleston provided that no person was eligible to the office of mayor "unless at the time of his election he is legally entitled to vote * *." (Italics supplied.) In relation to this requirement, the Court stated: "It is significant that the qualifications must exist `at the time of his election', not at some future time or upon the happening of some future event. The provision is clear. It should be applied as written. In State ex rel. Morrison v. Freeland, 139 W.Va. 327, 81 S.E.2d 685, 686, we held: `2. Where a statute requires that a person to be elected to office shall have a specific qualification at the time of his election, the requirement is not satisfied by the removal of the disqualification after election.' This being true, since the contest can not arise until after the election, to hold that mandamus can not be invoked in such cases as to a nominee for office would have the effect of denying any remedy prior to the election and, where the candidate elected could not qualify as to the office sought, would have the effect of rendering the election as to that office a nullity. Surely no such result could have been contemplated. It would not tend to induce orderly elections." In the Freeland case, the Court stated [139 W.Va. 327, 81 S.E.2d 690]: "One of the purposes of the Legislature in requiring the qualification to exist at the time of `election', and not at some later time, no doubt, was to prevent abortive elections, as in this very case." In reference to the contention that eligibility *403 of a candidate may be determined only in an election contest, the Court in the Londeree case stated: "To say that it is the only available and adequate remedy, however, obviously would deny courts having original jurisdiction of such proceedings as mandamus, quo warranto or prohibition, any jurisdiction as to questions concerning qualifications of candidates for nomination or election to office."
Regardless of the nature or degree of confusion which may result from prior decisions of this Court in reference to its right, duty and jurisdiction to determine in a mandamus proceeding against ballot commissioners that a candidate is qualified or eligible or that he is not qualified or not eligible in relation to the office he seeks, the question in this instance appears to be clear, because it does not appear that the board of ballot commissioners has instituted or initiated "an inquiry for the purpose of determining the question of his [the candidate's] legal qualifications" to hold the office, according to the language in the first point of the syllabus in the Schenerlein case, and in the syllabi of the McKnight and Harwood cases.
The board of ballot commissioners in the present case has taken no affirmative steps to disqualify Suder or to cause his name to be omitted from the ballot for the general election. This proceeding in mandamus has been instituted in this Court to determine Suder's eligibility to be elected sheriff before the board of ballot commissioners has taken any action whatsoever toward the actual formulation, preparation and printing of the ballots. For this reason, if the Court in this proceeding should direct the ballot commissioners to omit the name of Suder from the ballot, it can not in this case mean that the Court has approved the action of the board of ballot commissioners in assuming and undertaking to exercise a power, function or jurisdiction which such board does not have and can not exercise.
The constitutional provision in question renders any person under certain circumstances ineligible to be "elected." In reference to constitutional and statutory provisions of this nature the Court in the case of Slater v. Varney, 136 W.Va. 406, 419, 68 S.E.2d 757, 765, 70 S.E.2d 477, stated: "The election or the appointment of a person to public office is merely the means provided by law by which such person is enabled to obtain and discharge the duties of the office and it is manifest that an election to an office of a person who, by reason of a permanent disqualification or ineligibility, cannot legally hold or occupy the office is not a valid election. This is necessarily so. It would be absurd to say that a person who receives the highest number of votes for an office voted for at an election, but who cannot legally hold or occupy such office is or can be legally elected to the office merely because he received the greatest number of votes. That a valid election to a public office impliedly contemplates and embraces the right to hold the office is indicated by the decision of this Court in Dryden v. Swinburne, 20 W.Va. 89." (Italics supplied.) See also State ex rel. Morrison v. Freeland, 139 W.Va. 327, 334, 81 S.E.2d 685, 689.
If Suder is ineligible to be elected and if he can not lawfully serve as sheriff, his election would be a "nullity" in the language of the Londeree case, an "abortive" election in the language of the Freeland case, and "not a valid election" in the language of the Slater case. If he is not eligible to be elected, there should be a means of having this fact determined judicially in advance so that a properly qualified candidate may be selected to represent the same political party on the ballot for the general election, in order that the voters of Upshur County may be enabled to make their selection of a sheriff in the manner contemplated by law and by our system of government. A board of canvassers is not constituted as a tribunal having authority to make a judicial determination of the question here involved. But it is a non sequitur to assert that this Court lacks the power, jurisdiction and duty to determine such question in an original *404 proceeding merely because such power, jurisdiction and duty are lacking in the board of ballot commissioners.
For the reason stated, the Court holds that mandamus is a proper remedy to determine whether Eugene Charles Suder is eligible or ineligible to be "elected," and that this proceeding for that purpose is not premature.
The purpose of statutory and constitutional provisions similar to that now under consideration "would appear to be to avoid the temptation to use the office improperly in an effort to sustain tenure." 59 A.L.R.2d 719. In the case of Gorrell v. Bier, 15 W.Va. 311, 321, the Court stated: "The apparent object of the provision was to prevent the sheriff from holding the office continuously, by compelling him to go out of office at the end of a full term, the probable object of which was to prevent him from prostituting the office for the purposes of a re-election." "Since a constitution is a fundamental charter of government a limitation upon eligibility for office expressed therein presents only the question of the meaning of the particular disqualification, as its validity is established by the mere fact of inclusion." 59 A.L.R.2d 719. The very Constitution which creates the offices of sheriff and deputy sheriff imposes this restriction on the right to hold such offices. "Where the constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, there is no room for construction, and it would be mischievous and unlawful to assume it. If the intention is manifest from the language used and leads to no absurd conclusion, courts must give such provisions the effect clearly intended." 4 M.J., Constitutional Law, Section 7, page 94. "If a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision." State ex rel. Trent v. Sims, 138 W.Va. 244 syl. 1, 77 S.E.2d 122, 124. See also Flesher v. Board of Review, 138 W.Va. 765, syl. 2, 77 S.E.2d 890.
The intention of the constitutional provision now under consideration is clear and manifest from the language therein used. It becomes the duty of the Court, therefore, to apply such language according to the intention and purpose thereby made manifest.
It will be noted that the section of the Constitution in question provides initially that the same person shall not be elected sheriff for two consecutive "full" terms. It must be assumed that the word "full" was inserted designedly and for a purpose. This obvious purpose of the word was given effect in the case of Gorrell v. Bier, 15 W. Va. 311, as stated previously herein. It is perhaps equally significant that the framers of the Constitution omitted all language of a like or similar import in the provision relating to deputies.
It can not be regarded as insignificant that there was a failure to provide that a deputy sheriff shall be ineligible to be elected sheriff only after having served as deputy sheriff for a "full" term. The provision relating to deputies contains no such qualifying or restrictive language, but rather, with emphasis supplied, it is as follows: "* * * nor shall any person who acted as his deputy be elected successor to such sheriff * * *." It is not provided that the ineligibility of a deputy sheriff shall result only after he shall have "acted" as such for four years, three years as in the present case, or for any other specified period of time. Rather his ineligibility results from his having merely "acted" as deputy sheriff for an unspecified period of time. It may be that Suder believed that the intervention of one full calendar year between the effective date of his resignation and the date of the commencement of the succeeding regular four-year term would serve to remove the disqualification. We are unable to perceive any basis for such a construction of the constitutional language.
*405 Counsel for Suder in his brief contends that this proceeding to determine the question of eligibility is premature until Sheriff Tenney shall have completed serving his present full term which will expire December 31, 1960. The constitutional provision will admit of no such construction or application. Such would be contrary to the manifest spirit of the entire provision. On the question of the eligibility of a deputy to be elected sheriff for the succeeding term, the spirit of the constitutional language is emphasized by language pertaining to a situation presenting the converse of the present one: that is, a situation of a sheriff later undertaking to become a deputy. That language is: "* * * nor shall any sheriff act as deputy of his successor, * * *." Such language does not say that a sheriff may act as deputy for his successor during the fourth year of the latter's term of office, or that he may act as deputy if he resigns as sheriff prior to the expiration of his preceding four-year term. Here again we note a significant absence of such language as "full" term or any other language of like or similar import.
It is true that Sheriff Tenney's office may become vacant by his death, removal or resignation during the remaining portion of his regular four-year term, and that, in such an event, the person elected to the regular term commencing January 1, 1961, will, in a sense, be "successor" to the person appointed to fill such vacancy. If such an interpretation were placed on the constitutional language, it would be possible for the sheriff to resign during the waning days of his term, and thereby subvert such language and thwart the attainment of its obvious intent. Moreover, the language makes the deputy ineligible to be "elected", which contemplates that at the time he becomes a candidate, he should be free of an ineligibility which would render his valid election impossible. This eligibility to be elected could never be determined in advance of nomination or election, if its determination were dependent upon the uncertainty of the encumbent sheriff's serving his full term to the last month, week and day.
For the reasons stated herein, the Court holds that Eugene Charles Suder is ineligible to be elected sheriff of Upshur County in the general election to be held on November 8, 1960, because of his having served as deputy to the encumbent sheriff during the first three years of his current term of office.
Code 3-5-41, provides that any officer or person, upon whom any duty is devolved by Chapter 3 of the Code, which deals with elections, "may be compelled to perform the same by writ of mandamus." Included in the same section is another provision specifically dealing with the jurisdiction of this Court, as follows: "A mandamus shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him." (Italics supplied.) In discussing this language, as amended a few years previously, the Court in the case of Marcum v. Ballot Commissioners, 42 W.Va. 263, 26 S.E. 281, 36 L.R. A. 296, stated that the effect of the amended statute was to give the Court authority by mandamus to control judicial, as well as ministerial, duties of election officials, and to broaden the common law scope of mandamus. The Court stated (42 W.Va. at page 271, 26 S.E. at page 283,): "Why use the word `legally'? The power to compel performance is given in general words in the opening of the section, but later in the section it grows more specific, by using the word `legally,' thus using it sedately. We must give every word a meaning, especially as the lawmaker grew more precise or emphatic by that word. It is an implication quite strong in connection with other features that the officer should be compelled to perform all duties, of every cast, ministerial or judicial, according to law. It seems to me the legislature intended to use, for the sake of speedy final determination in the court of last resort, the only writ available under the circumstancesmandamus, *406 as a writ, of review to operate as a writ of certiorari; taking cognizance of all questions arising in the case, if the matter be one in nature at all reviewable on certiorari. The legislature was afraid to risk certiorari in such cases of emergency. If we give the statute any other construction, it would leave parties in many cases, in grave matters, without relief." For other cases recognizing the broadened scope of mandamus to compel performance of ministerial or judicial duties imposed by Chapter 3, see the following: Duncan v. County Court, 138 W.Va. 106, 110, 75 S.E.2d 97, 100; State ex rel. Bumgardner v. Mills, 132 W.Va. 580, 588, 53 S.E.2d 416, 424; Daugherty v. County Court, 127 W.Va. 35, 45, 31 S.E.2d 321, 326. The remedy by mandamus is in addition to other remedies provided by law. Miller v. Board, 126 W.Va. 248, syl. 1, 27 S.E.2d 599; State ex rel. Simon v. Heatherly, 96 W.Va. 685, syl. 1, 123 S.E. 795.
For a reference to cases from other jurisdictions in which election officials have been required by mandamus to omit from ballots the names of persons ineligible to be elected, see 55 C.J.S. Mandamus § 142, p. 240; 38 C.J., Mandamus, Section 322, page 724.
For the reasons stated herein the peremptory writ of mandamus as prayed for in the petition is awarded.
Writ awarded.
BERRY, Judge (dissenting).
I respectfully dissent from the majority opinion in this case, because it is in opposition to prior decided cases dealing with the same matter and does not specifically overrule such cases. It therefore tends for confusion in such matters for both the bench and the bar.
In the first place, the writ of mandamus is used against the board of ballot commissioners to prohibit them from placing the name of the Republican candidate for sheriff on the ballot, after a certificate of nomination regular on its face had been issued, received by the candidate and the result of the primary election recorded, showing such candidate regularly nominated. The ballots have not been made up and the names of the candidates have neither been placed on nor omitted from the ballot.
This Court has held in many recent cases that the board of ballot commissioners has no authority to inquire into the qualifications of a candidate and refuse to place his name on the ballot. State ex rel. McKnight v. Clark et al. as Board of Ballot Commissioners of Wetzel County, 86 W.Va. 496, 103 S.E. 399; State ex rel. Lockhart, Sr. et al. v. Rogers, Mayor, et al., 134 W.Va. 470, 61 S.E.2d 258; State ex rel. Harwood v. Tynes, 137 W.Va. 52, 70 S.E.2d 24; State ex rel. Schenerlein v. City of Wheeling, W.Va., 108 S.E.2d 788.
In the Schenerlein case there was a dissenting opinion, and the holding of the case at bar is in effect the same as the dissenting opinion in the Schenerlein case.
The majority opinion cites the case of State ex rel. Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302, as authority for granting the writ of mandamus prohibiting the board of ballot commissioners from placing the candidate's name on the ballot, without overruling the case of Martin v. White, 74 W.Va. 628, 82 S.E. 505, which holds just the opposite. Then too, the reason for, the granting of the writ of mandamus in the case of State ex rel. Pack v. Karnes, supra, has been entirely discredited by this Court in the cases of State ex rel. Hall v. Gilmer County Court, 87 W.Va. 437, 105 S.E. 693; Varney v. Mingo County Court, 102 W.Va. 325, 135 S.E. 179; State ex rel. Bumgardner v. Mills, 132 W.Va. 580, 53 S.E.2d 416. However, the reason given for the disqualification of the candidate in the Pack case has never been specifically overruled by this Court.
It is true that the case of Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127, indicates that a writ of mandamus would *407 lie in a case to compel a board of ballot commissioners to take the name of a candidate off the ballot, but in that case the board had performed its duties and placed the name of the candidate on the ballot, and it was cited and distinguished in the Schenerlein case. However, I do not think the writ of mandamus should be used in any case to compel the board of canvassers or any other officer or body to do something which it is without authority to do, or which would constitute an illegal act. See State ex rel. Schenerlein v. City of Wheeling, supra, and State ex rel. Wilson v. County Court of Barbour County et al., W.Va., 114 S.E.2d 904.
If it is the intention of the decision in this case to hold that a writ of mandamus will lie to compel a board of ballot commissioners to place the names of candidates on the ballot, to remove them, or not to place them on the ballot in the first instance, which a careful reading of the opinion would indicate, then I think that the decided cases holding to the contrary should be specifically overruled, in order to clarify the law pertaining to such matters.
In the case of State ex rel. McKnight v. Clark et al. as Board of Ballot Commissioners of Wetzel County, 86 W.Va. 496, 498, 103 S.E. 399, 400, dealing with this question, this Court said: "To hold that such a board possesses this power would be to bring into existence many controversies and contests for which there would never be a reason if this question is left for determination by competent authority after the election."
It would be much better to inquire into the eligibility of a candidate to hold office after a general election and not after a primary election. In the first place, he may never be elected and the inquiry, of course, would be entirely unnecessary. Then too, many things could happen either to cure the disqualification in some instances or to eliminate a candidate before a general election, making it unnecessary to employ the writ of mandamus to test the qualification or eligibility of a candidate to hold office before he is elected.
For the reasons stated herein, I would have refused to grant the writ.
I am authorized to say that Judge HAYMOND concurs in the views expressed in this opinion.
HAYMOND, Judge (dissenting).
Though I concur in the views expressed in the dissenting opinion filed by Judge BERRY, in which I have joined, I register this separate dissent because of the farreaching and, in my judgment, the intolerable and unsettling effect of the decision of the majority upon the heretofore well settled and firmly established procedure by many decisions of this Court in connection with the nomination and the election of public officers under the constitutional and statutory provisions which constitute the election law of this State, and because the decision of the majority is contrary to a number of prior decisions of this Court concerning the proper function of a mandamus proceeding and necessarily causes uncertainty and confusion in the use of that writ and in the law governing elections in this jurisdiction.
At the outset, it should be emphasized that this is an original proceeding in mandamus in this Court as distinguished from other well recognized proceedings in which remedies are available in election controversies, that when this mandamus proceeding was instituted the defendants, constituting the board of ballot commissioners of Upshur County, had taken no action and given no indication that it would or would not place the name of the Republican nominee for the office of sheriff upon the official ballot to be used in the general election in November 1960, or that it would or would not strike his name from such ballot. It should also now be pointed out that, under the statute providing the remedy of mandamus to compel any person or officer to perform any duty imposed by the statute, the authority conferred *408 by the statute upon this Court in an original proceeding in mandamus is to compel any such officer "to do and perform legally any duty herein required of him." Section 41, Article 5, Chapter 3, Code, 1931. (Emphasis supplied). It should also be observed that the Republican nominee for sheriff of Upshur County might cease to be a candidate for that office by death, withdrawal or removal from the county before the election in November, or might be defeated in that election, and that, if any of those situations should occur, it would not be necessary or proper to prosecute any proceeding to prevent or interfere with his candidacy for election to that office.
A basic principle in the law of mandamus, repeatedly recognized and applied by this Court, is that the writ of mandamus will not be awarded to require the person to whom it should be directed to perform an act which by law he is not required or empowered to perform. State ex rel. Wilson v. The County Court of Barbour County, W.Va., 114 S.E.2d 904; State ex rel. Schenerlein v. City of Wheeling, W.Va., 108 S.E.2d 788; State ex rel. Bumgardner v. Mills, 132 W. Va. 580, 53 S.E.2d 416; State ex rel. The City of Huntington v. Heffley, 127 W.Va. 254, 32 S.E.2d 456; Butler v. State Compensation Commissioner, 107 W.Va. 619, 149 S.E. 828; Pardue v. County Court of Lincoln County, 105 W.Va. 235, 141 S.E. 874; State ex rel. Kelly v. State Road Commission, 102 W.Va. 88, 134 S.E. 465; State ex rel. Matheny v. County Court of Wyoming County, 47 W.Va. 672, 35 S.E. 959; Dempsey v. Board of Education of Hardee District, 40 W.Va. 99, 20 S.E. 811. See also Eison v. Shirley, 165 Ga. 374, 141 S.E. 295; Graham v. Merritt, 165 Ga. 489, 141 S.E. 298; 55 C.J.S., Mandamus, Section 10c; 34 Am.Jur., Mandamus, Sections 62 and 76.
Article 5, Chapter 3, Code, 1931, as amended, which provides for the creation of a board of ballot commissioners for each county in this State defines in Section 3 the duties of the board. That section, to the extent here pertinent, provides: "It shall be the duty of the board of ballot commissioners for each county to provide printed ballots for every election for public officers in which the voters or any of the voters within the county participate, and cause to be printed, on the appropriate ballot, the name of every candidate whose name has been certified to or filed with the clerk of the circuit court of the county in any manner provided for in this chapter." Section 4 provides for the form and the arrangement of the ballots. Though by other sections of the election statutes the board is directed or required to do certain specified acts, neither Section 3 nor any other statute imposes, or attempts to impose, any duty or confers, or attempts to confer, any authority upon the board to determine the qualification or the eligibility of any candidate to be elected to or to hold any public office. By the quoted provision of Section 3 the power and the authority of the board are limited to the process of preparing and providing the ballots according to the form and arrangement specified in Section 4 and of causing to be printed, on the appropriate ballot, the name of every candidate whose name has been properly certified to or filed with the clerk of the circuit court or other competent authority. Neither Section 3 nor any other statutory provision authorizes or directs the board to omit the name of any such candidate from the printed ballot. There is no assertion in the majority opinion that any such duty is imposed upon the board or that it possesses any such authority or the power to exercise it. The conclusion reached by the majority to award the writ, however, necessarily implies that the board, in some mysterious manner and from some unknown source, is subject to such duty and has such authority and the power to exercise it. Manifestly, unless there is such duty, a writ of mandamus can not be awarded to compel the performance of a duty which does not exist; yet the action of the majority in awarding the writ accomplishes that amazing and incredible result in requiring performance by the board *409 of an act which it is under no duty, and is without authority, to perform.
In at least three rather recent decisions constituting, until now, its later decided pronouncements, this Court has held that the board of ballot commissioners has no authority to institute an inquiry to determine the legal qualifications of a candidate to hold the office to which he seeks election. State ex rel. Schenerlein v. City of Wheeling, W.Va., 108 S.E.2d 788; State ex rel. Harwood v. Tynes, 137 W.Va. 52, 70 S.E.2d 24; State ex rel. McKnight v. Board of Ballot Commissioners of Wetzel County, 86 W.Va. 496, 103 S.E. 399. Notwithstanding these decisions the majority in a labored but an inept and unsuccessful effort to distinguish them from the case at bar, instead of expressly overruling them, undertakes by judicial pronouncement to confer that authority, which only the Legislature might or might not attempt to do, upon the board and then directs the board how to exercise such authority. By such surprising and heretofore unheard of action and without citation of supporting authority, this Court decides, in the first instance, for the board, a question which the board is without authority to consider or determine. It is clear that the Legislature, in conferring limited authority on the board of ballot commissioners, did not intend that it should be empowered to determine the qualifications of a candidate to be elected to or to hold public office, for the granting of such authority would be clearly violative of Article V of the Constitution of West Virginia as a matter of constitutional law and for that reason invalid, and, if valid, would, from a practical standpoint, give rise to controversies of unlimited number and of long duration which would cause delay in the final preparation of the ballots and would most likely continue beyond the date fixed for an election and prevent the preparation of the election ballots in time for use at the time fixed by law for the holding of such election.
In the McKnight case this Court made these sound and positive statements: "There is no authority conferred by law upon a board of ballot commissioners to try the question of the eligibility of candidates. To hold that such a board possesses this power would be to bring into existence many controversies and contests for which there would never be a reason if this question is left for determination by competent authority after the election. We are of opinion that when a candidate files a certificate showing therein that he is eligible to the office, the board of ballot commissioners has no option but to place his name upon the ballot. It would, of course, be different if the certificate itself showed his ineligibility, but in this case the certificate shows that the relator is eligible to the office for which he desires to be a candidate, and the inquiry of the board of ballot commissioners must stop there. If he should be elected to this office a proper inquiry can then be instituted before a competent tribunal to determine the question of his eligibility."
It is obvious that the reference in the above quoted passage from the McKnight case to the proper inquiry to be instituted before a competent tribunal to determine the eligibility of a candidate who has been elected to an office to be filled by the voters of a county, such as the office of sheriff, is an election contest before the county court authorized by Article VIII, Section 24, of the Constitution, and Section 1, Article 9, Chapter 3, Code, 1931, and a quo warranto proceeding or a proceeding upon an information in the nature of a writ of quo warranto in any court of competent jurisdiction to determine the right of a person to hold a public office to which he claims to be entitled.
Section 2, Article 9, Chapter 3, Code, 1931, expressly provides that the contestant in an election contest may object to the qualification of a person returned as elected. This Court has held in numerous cases that a contestant may maintain an election contest on the ground that the person returned as elected is ineligible or disqualified to be elected to or to hold an office to which he has been returned as elected. *410 Slater v. Varney, 136 W.Va. 406, 68 S.E.2d 757, 70 S.E.2d 477; Irons v. Fry, 129 W.Va. 284, 40 S.E.2d 340; Orndorf v. Potter, 125 W.Va. 785, 25 S.E.2d 911; State ex rel. Savage v. Robertson, 124 W.Va. 667, 23 S.E.2d 281; Dryden v. Swinburne, 20 W.Va. 89; Gorrell v. Bier, 15 W.Va. 311; Dryden v. Swinburn, 15 W.Va. 234.
Section 1, Article 2, Chapter 53, Code, 1931, provides that a writ of quo warranto may be awarded and prosecuted in the name of the State of West Virginia at the instance of the attorney general or the prosecuting attorney of any county against a corporation or a natural person in certain instances, one of which is against any person who intrudes into or usurps any public office; and Section 4 provides that in any case in which a quo warranto would lie the attorney general or the prosecuting attorney of any county, at his own instance or at the relation of any person interested, or any person interested, may in the name of the State of West Virginia apply to the circuit court or the judge, as mentioned in Section 2 of the same article, for leave to file an information in the nature of a writ of quo warranto for any of the causes and against any of the persons mentioned in Section 1.
Though it is true that only a candidate for nomination or election to a county office may institute and maintain an election contest concerning such office, Irons v. Fry, 129 W.Va. 284, 40 S.E.2d 340, and that only the attorney general or the prosecuting attorney of a county can prosecute a quo warranto proceeding and only those officers or an interested person can prosecute a proceeding upon an information in the nature of a writ of quo warranto, Slater v. Varney, 136 W.Va. 406, 68 S.E.2d 757, 70 S.E.2d 477; State ex rel. Scanes v. Babb, 124 W.Va. 428, 20 S.E.2d 683; State ex rel. Depue v. Matthews, 44 W.Va. 372, 29 S.E. 994, each of these proceedings is available and affords a proper remedy to any person entitled to maintain any such proceeding to determine the eligibility or the qualification of any person to be elected to or to hold the office to which he has been returned as elected.
As, under the recent decisions of this Court in State ex rel. Schenerlein v. City of Wheeling, W.Va., 108 S.E.2d 788; State ex rel. Harwood v. Tynes, 137 W.Va. 52, 70 S.E.2d 24; and State ex rel. McKnight v. The Board of Ballot Commissioners of Wetzel County, 86 W.Va. 496, 103 S.E. 399, the board of ballot commissioners is without authority to grant the relief for which the petitioners pray in this proceeding to investigate and determine the ineligibility of the Republican nominee for the office of sheriff of Upshur County and for that reason to omit his name from the official ballot to be used in the general election in November, the petitioners have failed to satisfy the requirement recognized and applied in an unbroken series of decisions of this Court and reaffirmed in State ex rel. Evans v. Kennedy, W.Va., 115 S.E.2d 73, decided at the April term of this Court, that he who seeks relief by mandamus must show a clear legal right to the remedy. Some of the many other cases to the same effect are Daurelle v. Traders Federal Savings and Loan Association of Parkersburg, 143 W.Va. 674, 104 S.E.2d 320; Hockman v. The County Court of Tucker County, 138 W.Va. 132, 75 S.E.2d 82; State ex rel. Koontz v. Board of Park Commissioners of the City of Huntington, 131 W.Va. 417, 47 S.E.2d 689; State ex rel. Goloversic v. Arnold, 128 W.Va. 272, 36 S.E.2d 209; Childers v. State Road Commission, 124 W.Va. 233, 19 S.E.2d 611; Ebbert v. Bouchelle, 123 W.Va. 265, 14 S.E.2d 614; Brumfield v. Board of Education of Logan County, 121 W.Va. 725, 6 S.E.2d 238; Rusinko v. Shipman, 111 W.Va. 402, 162 S.E. 316; Antonovich v. State Compensation Commissioner, 110 W. Va. 273, 157 S.E. 591; State ex rel. Woodyard Publications v. County Court of Hardy County, 108 W.Va. 166, 150 S.E. 152; State ex rel. Goshorn v. Johnson, 102 W. Va. 629, 135 S.E. 899. By reason of the failure of the petitioners to satisfy that *411 basic requirement the writ should have been denied in this proceeding on that ground alone.
When a board of ballot commissioners places the name of a candidate upon the official ballot it discharges the duty imposed upon it by the statute and in so doing does not exercise authority beyond that conferred upon it by statute. In placing the name of the candidate upon the ballot it does not undertake to determine the question of the eligibility of such candidate to be elected to or to hold the office to which he seeks to be elected. When, however, it omits his name from the ballot on the ground that he is ineligible or disqualified to be elected to or to hold the office which he seeks, it fails to discharge its plain statutory duty and in determining the question of his eligibility or qualification as a candidate engages in the performance of a judicial act. This it may not do; and in each of the three cases of State ex rel. Schenerlein v. City of Wheeling, W.Va., 180 S.E.2d 788; State ex rel. Harwood v. Tynes, 137 W.Va. 52, 70 S.E.2d 24; and State ex rel. McKnight v. The Board of Ballot Commissioners of Wetzel County, 86 W.Va. 496, 103 S.E. 399, the board of ballot commissioners was required to place the name of the candidate upon the ballot. In placing the name of a candidate upon the ballot the act of the board constitutes the performance of a ministerial duty; but when the board undertakes to determine the question of eligibility or qualification of the candidate and in so doing omits his name from the ballot it, engages in the performance of a judicial act. See Marcum v. Ballot Commissioners of Lincoln, Logan, Mingo and Wayne Counties, 42 W.Va. 263, 26 S.E. 281, 31 L.R.A. 296.
In State v. Huber, 129 W.Va. 198, 40 S. E.2d 11, 168 A.L.R. 808, in discussing the nature of judicial power, this Court said: "It is the power which a regularly constituted Court exercises in matters which are brought before it, in the manner prescribed by statute, or established rules of practice of courts, and which matters do not come within the powers granted to the executive, or vested in the legislative department of the Government. The Legislature may impose duties, judicial in character, upon the courts, but having once imposed these powers it has no right to control the exercise thereof; and that, we think, constitutes judicial power." It is clear that the question of the eligibility or qualification of a candidate to be elected to or to hold a public office is a judicial question which no administrative agency, such as a board of ballot commissioners, but only a court of competent jurisdiction, in the exercise of its judicial power, can consider and determine; and this it must do in a proper proceeding. In State v. Huber, 129 W.Va. 198, 40 S.E.2d 11, 168 A.L.R. 808, this Court said that an administrative officer can not exercise judicial power and that only courts of record and justices of the peace can exercise such power.
Article V of the Constitution of West Virginia provides that "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature." This Court, in many cases, has been insistent and persistent in its effort to enforce the true meaning, intent and purpose of that article and to discourage and prevent any departure from the enforcement of its true meaning, intent and purpose. State v. Huber, 129 W.Va. 198, 40 S.E.2d 11, 168 A.L.R. 808. The Legislature can not impose upon any court a duty which requires the performance of an act not judicial in character. State v. Huber, 129 W.Va. 198, 40 S.E.2d 11, 168 A.L.R. 808; In re Proposal to Incorporate Town of Chesapeake, 130 W.Va. 527, 45 S.E.2d 113; Sims v. Fisher, 125 W.Va. 512, 25 S.E.2d 216; County Court of Raleigh County v. Painter, 123 W.Va. 415, 15 S.E.2d 396; Staud v. Sill, 114 W.Va. 208, 171 S.E. 428; Baker v. County Court of Tyler County, *412 112 W.Va. 406, 164 S.E. 515; Danielley v. The City of Princeton, 113 W.Va. 252, 167 S.E. 620; Hodges v. Public Service Commission, 110 W.Va. 649, 159 S.E. 834; Sutherland v. Miller, 79 W.Va. 796, 91 S. E. 993, L.R.A.1917D, 1040. The Legislature does not possess the power to require any court to act as an administrative agency and any court which acts in such capacity violates the plain provisions of Article V of the Constitution. State ex rel. Richardson v. County Court of Kanawha County, 138 W.Va. 885, 78 S.E.2d 569; Sims v. Fisher, 125 W.Va. 512, 25 S.E.2d 216. Because of the separation of the powers of government as provided by and required in Article V of the Constitution, the Legislature can not confer judicial power upon the legislative department; Anderson v. Bowen, 78 W.Va. 559, 89 S.E. 677, or the executive department, or any administrative agency of either of those departments of government; the executive department can not exercise legislative power, State v. Mounts, 36 W.Va. 179, 14 S.E. 407, 15 L.R.A. 243; State ex rel. Miller v. Buchanan, 24 W.Va. 362; and the judiciary can not exercise legislative power, State of West Virginia v. Dent, 25 W.Va. 1. For those reasons the action of this Court in determining the question of the eligibility and the qualification of the Republican nominee for sheriff of Upshur County, in the first instance, for the board of ballot commissioners, is an attempt to confer judicial power upon the board of ballot commissioners, an administrative agency of the legislative department of government, and its action in requiring the board to omit his name from the official ballots to be used in the November election is an unauthorized exercise of judicial power because violative of the provisions of Article V of the Constitution, which expressly prohibit the exercise of judicial power by either the executive or the legislative department of the government.
The settled law of this State, announced in many decisions of this Court, is that administrative agencies, such as a board of canvassers and a board of ballot commissioners, each of which is created and its powers and duties are prescribed by statute, can do only that which such agencies are by statute authorized to do. State ex rel. Wilson v. County Court of Barbour County, W.Va., 114 S.E.2d 904; State ex rel. Thompson v. Fry, 137 W.Va. 321, 71 S.E.2d 449; State ex rel. Bumgardner v. Mills, 132 W.Va. 580, 53 S.E.2d 416; Funkhouser v. Landfried, 124 W.Va. 654, 22 S.E.2d 353; Brazie v. Fayette County Commissioners, 25 W.Va. 213.
It is also well established by many decisions of this Court that the system of elections in this State is not of common law origin and that the exercise of the right of sufferance is regulated and controlled exclusively by constitutional and statutory provisions. Evans v. Charles, 133 W.Va. 463, 56 S.E.2d 880; Simms v. The County Court of Kanawha County, 134 W.Va. 867, 61 S.E.2d 849; State ex rel. Lockhart v. Rogers, 134 W.Va. 470, 61 S.E.2d 258; State ex rel. Robertson v. County Court of Kanawha County, 131 W.Va. 521, 48 S.E.2d 345; Brannon v. Perkey, 127 W. Va. 103, 31 S.E.2d 898, 158 A.L.R. 631; State v. Edwards, 95 W.Va. 599, 122 S.E. 272; Booten v. Pinson, 77 W.Va. 412, 89 S.E. 985, L.R.A.1917A, 1244. The manner of conducting elections in this State is governed by statutes and the power of the Legislature to deal with elections is plenary except to the extent that it is limited by the provisions of the Constitution of this State and of the Constitution of the United States. Evans v. Charles, 133 W.Va. 463, 56 S.E.2d 880; State ex rel. Forsythe v. The County Court of Cabell County, 131 W.Va. 570, 48 S.E.2d 412; Halstead v. Rader, 27 W.Va. 806.
As the statute, which creates the board of ballot commissioners and confers the authority it may exercise and imposes the duties it is directed to perform, does not undertake to authorize or empower, and in my judgment could not constitutionally authorize or empower, the board to determine the eligibility or the qualification of a candidate *413 for public office or, on the ground of his ineligibility or disqualification, to omit his name from the ballots to be used at an election, it is clear that the board is without authority to perform either of those acts. As such acts, if performed by the board, would be unauthorized and for that reason also illegal, under the rule recognized and applied in the previously cited cases that the writ of mandamus will not be awarded to require the person to whom it is directed to perform an act which by law he is not required or empowered to perform, a writ of mandamus should not have been awarded in this proceeding to require the board to perform such unauthorized and illegal acts or either of them.
Though the tendency in this jurisdiction is to enlarge and advance the scope of the remedy by mandamus in order to afford the relief to which a party is entitled when there is no other adequate and complete legal remedy, the use of that writ is subject to certain restrictions and limitations. State ex rel. Vance v. Arthur, 142 W.Va. 737, 98 S.E.2d 418; Stowers v. Blackburn, 141 W.Va. 328, 90 S.E.2d 277; Carter v. The City of Bluefield, 132 W.Va. 881, 54 S.E. 2d 747; Bailey v. Coleman, 123 W.Va. 510, 16 S.E.2d 918, 137 A.L.R. 308; Cross v. West Virginia Central & Pennsylvania Railway Company, 35 W.Va. 174, 12 S.E. 1071. For instance mandamus does not lie when another specific and adequate remedy is available; or to compel the performance of an unauthorized or illegal act; or when there is no duty of the defendant to perform the act which the petitioner seeks to have performed; or to direct the exercise of discretion; and mandamus will not be permitted as a substitute for or to exercise the functions of a writ of error, an appeal or a writ of certiorari. See 12 Michie's Jurisprudence, Mandamus, Sections 3 and 9, and the cases cited in the notes to those sections.
The use of the writ of mandamus is expressly authorized by Section 41, Article 5, Chapter 3, Code, 1931, for the purpose of expediting the ascertainment and declaration of the results of elections and the performance of other duties by election officers. The first sentence of that section provides that any officer or person, upon whom a duty is devolved by that chapter, may be compelled to perform such duty by writ of mandamus. The same section also provides that "A mandamus shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him." (Emphasis supplied). As the board of ballot commissioners is under no duty and is without authority to determine the eligibility or the qualification of a candidate for public office, or to omit his name from the ballot on the ground that he is ineligible or disqualified to be elected to or to hold public office, any action by it of that character could not possibly constitute its legal performance of any statutory duty imposed upon it. For that reason alone this Court should have denied the writ of mandamus in this proceeding.
The original jurisdiction of this Court in mandamus does not extend beyond its authority to command a board of canvassers to do that which it is required by law, but has refused, to do. State ex rel. Wilson v. The County Court of Barbour County, W.Va., 114 S.E.2d 904, decided at the April term of this Court; State ex rel. Bumgardner v. Mills, 132 W.Va. 580, 53 S.E.2d 416. This principle, of course, applies to the statutory board of ballot commissioners. In the Wilson case a concurring opinion was filed by one of the judges of this Court, in which the holding that "The original jurisdiction of this Court in mandamus does not extend beyond its authority to command a board of canvassers to do that which it is required by law, but has refused, to do.", was challenged as incorrect. That opinion, however, which is not supported by logic or authority and is contrary to the decisions of this Court in the Wilson and Bumgardner cases, represents merely the individual views of the writer of the opinion; and notwithstanding the views expressed in that opinion, the holding of this *414 Court in those two cases, of course, constitutes the law of this State on that point.
In this connection it is disturbing to observe the attitude of the majority, as indicated by its opinion and the conclusion reached, to disregard the numerous prior decisions of this Court which uniformly hold that a writ of mandamus will not be awarded to compel a person to whom it is directed to perform an unauthorized or illegal act or an act which it is not his legal duty to perform, and the numerous prior decisions which also hold that a person who seeks relief by mandamus must show a clear legal right to the remedy which he seeks. Especially am I surprised and disturbed by the action of the majority in refusing to follow and be governed by the three recent decisions of this Court in the Schenerlein, Harwood and McKnight cases, for those decisions are not only sound in principle but are and, under the salutary doctrine of stare decisis, should be regarded as binding authority to be adhered to by this Court. In my judgment the proper approach in the consideration and decision of a case is to study the prior decisions of the Court and in the light of such authority to adapt the personal view of the individual judge to conform to the applicable principles enunciated in such prior decisions unless it clearly appears that such former holdings are clearly wrong, and in that event they should not be ignored, disregarded or distinguished but instead should be expressly overruled.
Under the doctrine of stare decisis, a principle of law which has become settled by a series of decisions is generally binding on the courts and should be followed in similar cases. 21 C.J.S. Courts, Section 187. See also Lyon v. Grasselli Chemical Company, 106 W.Va. 518, 146 S.E. 57. Stare decisis is a salutary rule entitled to great weight, and ordinarily should be strictly adhered to by the courts especially where a different ruling would work injustice to litigants. 21 C.J.S. Courts, Section 187. In In re Proposal to Incorporate Town of Chesapeake, Kanawha County, 130 W.Va. 527, 45 S.E.2d 113, this Court, quoting from Black's Law Dictionary, Third Edition, said: "The doctrine of stare decisis rests upon the principle that law by which men are governed should be fixed, definite, and known, and that, when the law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent authority." In Marguerite Coal Company v. Meadow River Lumber Company, 98 W.Va. 698, 127 S.E. 644, this Court held in point 2 of the syllabus that "Where a question has been decided by this Court, and parties relying on the decision, have transacted important affairs which would be seriously affected by a change of rule announced in said decision, this Court will adhere to it in subsequent cases however it might be inclined to hold if the question were res integra."
In Clarke v. Figgins, 27 W.Va. 663, referring to the symmetry in the development of the common law and the doctrine of stare decisis, this Court used this pertinent language: "If a different course had been pursued, and hasty and ill-advised decisions made without regard to the precedents, the common law instead of showing symmetry in its perfection would be one incongruous mass, and no one could form any idea how a matter would be decided, as in each case the judge would decide according to his own peculiar notion of what in that particular case might be right; and we know, that it is often true, that what one would consider right in the particular case another would regard as wrong. Nothing keeps a judge so strictly in the line of his duty, as the feeling and constant realization of the fact, that he is bound by precedents. He knows that his opinion will be by the legal profession with all its astuteness subjected to the severest criticism, and if he dares to depart on a given question from the well marked line of precedents, either his ability or integrity is in great danger of being impugned. There is too much clamor in this day to be governed less by precedents and to decide as each judge may think right in the particular case, and the reason given is, *415 that the law as laid down by the precedents is uncertain. The only cause of this uncertainty is, that some courts in the hurry of business have rendered hasty decisions, without that consideration which ought to have been given to them, and perhaps have not cited a single authority, and then another judge or court in a great hurry has cited that case as an authority for another bad decision. It is only safe to know how the question has been settled, if settled at all, and then not depart from the rule; and if it has not been settled, to settle it after a thorough examination of the principles, upon which it must rest."
In my judgment, any unwarranted departure from the doctrine of stare decisis, such as the majority has effected by the decision in this proceeding in disregarding though not overruling the decisions in the Schenerlein, Harwood and McKnight cases, produces conflict, uncertainty and confusion in the reported decisions of this Court on the questions involved and such decisions will not be regarded with respect or as reliable authority. For example how will litigants know whether this Court, in the future, will adhere to the present decision by a divided court or its decision by a divided court in the Schenerlein case, or its unanimous decisions in the Harwood and McKnight cases; or how will a board of ballot commissioners know how to act if the questions here involved hereafter come before it; or how will the members of the bar advise and assist a client when these questions again arise; or how will the trial courts of this State know how to rule when confronted with the same questions in cases which they are required to hear and determine? At best the law is a complex system of government and the proper application of its principles in the determination of the questions constantly arising in countless controversies is fraught with difficulty. For that reason the courts should strive to attain uniformity in decisions which involve the same or similar questions. This can only be achieved by careful consideration of and adherence to prior decisions in which such questions have been carefully considered and resolved. Hasty, ill considered or conflicting decisions which pose unanswered questions and create uncertainty, doubt and confusion in a legal system, which even when graced by uniformity in the decisions of its courts, is difficult to comprehend and administer, should at all times be scrupulously avoided. See remarks by my grandfather, Alpheus F. Haymond, a judge of this Court from 1873 to 1882, upon the occasion of his resignation at a session held at Wheeling, December 16, 1882. 21 W.Va., Memoranda, pages c to f.
The majority, disregarding the decisions of this Court in the Schenerlein, Harwood and McKnight cases, seeks to justify, by the prior decisions in Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127, and Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302, its decision in awarding the writ which compels the board of canvassers to omit the name of the Republican nominee for sheriff from the ballots to be used at the general election in November.
In the Londeree case the petitioners sought a writ of mandamus to require the ballot commissioners of the City of South Charleston to strike the name of the defendant Londeree, a candidate for mayor, from the ballots to be used at the general election to be held in that city and to require the county clerk as registrar to strike his name from the registration record on the ground that, as a resident of the United States Naval Reservation, he was not a resident of this State and for that reason was ineligible for election to the office of mayor. The board of ballot commissioners did not undertake to determine his qualifications for that office and, instead of removing his name from the ballot as a nominee and candidate, performed its duty, in accordance with the holding of this Court in the Harwood and McKnight cases, and placed his name on the ballot; and in that case this Court refused to disturb or reverse that action of the board of ballot commissioners. The controverted question in the Londeree case was whether the State of West Virginia *416 had ceded to the Federal Government the United States Naval Reservation by legislative enactment and the effect of that statute with respect to the status of Londeree as a resident and qualified voter of this State, and the major portions of the majority opinion and the dissenting opinion were devoted to and dealt with that question. The question of the authority of the board of ballot commissioners or of this Court, for such board, to order it to determine his qualifications for the office of mayor and to remove his name from the ballot, which as above stated was not done, was not fully considered and was not necessary to the decision of this Court in sustaining the action of the board in placing his name on the ballot. Point 1 of the syllabus in that case that "Any officer or person on whom any duty is devolved by Chapter Three of the Code, as amended, may be compelled to perform the same by writ of mandamus.", though unnecessary to the decision of the case because that statute did not impose any duty upon the board of ballot commissioners to determine the qualification of the candidate and to remove his name from the ballot on the ground that he was ineligible for election to the office of mayor, is, of course, a correct but an abstract statement of that principle of law which should be applied in a case in which performance of an existing duty should be required. As that statement, however, was not applied in that case, it does not apply in this proceeding, and even though incorporated in a point of the syllabus, it does not, in my judgment, constitute binding authority which requires adherence by this Court in any case which may subsequently come before it. The same comment applies to the obvious dicta in the gratuitous advisory statements contained in this paragraph of the majority opinion in the Londeree case: "It is true, as pointed out in some of the cases just cited, that in some instances the qualification of a candidate may be determined in an election contest proceeding. Code, Chapter 3, Article 9. To say that it is the only available and adequate remedy, however, obviously would deny courts having original jurisdiction of such proceedings as mandamus, quo warranto or prohibition, any jurisdiction as to questions concerning qualifications of candidates for nomination or election to office. The cases cited are sufficient authority to the contrary. See State ex rel. Morrison v. Freeland, supra." In In re Kanawha Valley Bank, W.Va., 109 S.E.2d 649, this Court, citing Chesapeake and Ohio Railway Company v. Martin, 154 Va. 1, 143 S.E. 629, 152 S.E. 335, used this language: "Obiter dicta or strong expressions in an opinion, where such language was not necessary to a decision of the case, will not establish a precedent." In 17 Michie's Jurisprudence, Stare Decisis, Section 5, the text, supported by numerous decisions of this Court and the Supreme Court of Appeals of Virginia, contains this language: "General expressions, in every opinion, are to be read and considered in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is involved for decision."
In the case of Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302, this Court said in the opinion that a person who was not lawfully nominated at a primary election but who later became the nominee of a party executive committee had no right by virtue of the action of such committee to have his name placed on the ballot. One of the reasons mentioned in the opinion for the statement that the candidate was not lawfully nominated at the primary election was his failure to file with the clerk of the county court at least seven days before the primary election an itemized sworn statement of his financial transactions in connection with his candidacy and his failure to file such statement at any time within eight days after the primary election. The opinion also states that if the name of a person regularly and legally nominated is omitted from the ballot that upon a showing of compliance with the law on his part he may by mandamus require the ballot commissioners to perform "their duty to put his name *417 on the official ballot, though this would call for a reconvening of the board to discharge their duties lawfully.", citing Frantz v. County Court of Wyoming County, 69 W.Va. 734, 73 S.E. 328; State ex rel. Heironimus v. Town of Davis, 76 W.Va. 587, 85 S.E. 779; and State ex rel. Lamb v. The Board of Ballot Commissioners of Wetzel County, 82 W.Va. 752, 97 S.E. 284. Though this Court held in point 1 of the syllabus in the Karnes case that "A citizen, taxpayer and voter has such interest as entitles him to maintain mandamus to compel a board of ballot commissioners to discharge their duties lawfully in respect to the preparation of ballots for a general election.", it is significant that there is no syllabus in that case that states specifically that a board of ballot commissioners can be compelled in a proceeding in mandamus to remove or omit the name of a candidate from an official ballot because he is ineligible for election to the office which he seeks or for any other reason. Yet notwithstanding the omission of a syllabus of that character the majority in this proceeding by citing point 1 of the syllabus in the Karnes case, which admittedly contains a correct statement of law which has no application to the questions here involved, relies upon the Karnes case as authority for its action in awarding the writ of mandamus in the case at bar. If, however, by any plausible prestidigitation or legal legerdemain the majority could consider the Karnes case as authority for its action in awarding a writ of mandamus it is sufficient to say that the reasoning on which the decision in the Karnes case as to the qualification of the nominee or the validity of his nomination because of his failure to file the requisite financial statements in connection with his campaign, has been expressly disapproved by subsequent decisions of this Court. State ex rel. Bumgardner v. Mills, 132 W.Va. 580, 53 S.E.2d 416; Varney v. County Court of Mingo County, 102 W.Va. 325, 135 S.E. 179; State ex rel. Harmon v. Board of Canvassers, 87 W.Va. 472, 105 S.E. 695; State ex rel. Hall v. County Court of Gilmer County, 87 W.Va. 437, 105 S.E. 693. Moreover, the holding in point 4 of the syllabus in the Karnes case that "And where there has been no lawful nomination at such primary election, the executive committee of a political party can not lawfully appoint a nominee with right to have his name placed by the ballot commissioners on the official ballot to be voted at a general election.", has been superseded by a subsequently enacted statute, Section 23, Article 4, Chapter 3, Code, 1931, as amended, which provides that if any vacancy shall occur in the party nomination of candidates for office, caused by death, withdrawal, failure to make the nomination for the office at the primary election, or otherwise, it may be filled and the name of the candidate certified by the executive committee of the political party for the political division in which the vacancy occurs. And furthermore, if the decision in the Karnes case could possibly be considered as authority for the action of the majority in awarding the writ in this proceeding, that case, having been decided prior to the decisions of this Court in the McKnight and Harwood cases and being inconsistent with the holding in those cases, has been actually, though not expressly, overruled and disapproved by those decisions.
In view of the foregoing the decision in the Karnes case is, indeed, a slender reed and an insecure foundation on which to base a subsequent decision by this Court.
As additional authorities in support of my contention that the relief sought by the petitioners in the case at bar can not be obtained in a proceeding in mandamus, I mention Varney v. The County Court of Mingo County, 102 W.Va. 325, 135 S.E. 179; England v. Board of Canvassers of Raleigh County, 102 W.Va. 696, 136 S.E. 266; and State ex rel. Phillips v. Heatherly, 102 W. Va. 116, 134 S.E. 594. In the Varney case, an original proceeding in mandamus, this Court held in point 1 of the syllabus that "A county court, sitting as a canvassing board, has no authority to pass on the eligibility of candidates." In the Phillips case this Court also held in point 1 of the syllabus *418 that "A board of canvassers has no power to inquire into and determine the right of a candidate to the office voted for on the official ballot, upon its own motion, or upon the motion of the incumbent of the office who was not a candidate on such ballot." The reasoning of those cases directly applies to the board of ballot commissioners, an administrative agency, which, like the board of canvassers, is created and its powers and duties are defined and limited by statute. In Martin v. White, 74 W.Va. 628, 82 S.E. 505, a mandamus proceeding in which the question of the qualifications of White and other members of a city council to hold that office was involved, this Court used this pertinent language: "The question whether White and the others were in fact disqualified is not cognizable in mandamus."
My principal reason for this dissent is to show that mandamus is not the proper proceeding to determine, in the first instance, the qualification of a candidate for public office and to require the board of ballot commissioners to strike or omit his name from an official ballot on the ground that he is ineligible to be elected to or to hold the office for which he is a candidate. It is not my purpose in this proceeding to consider and determine upon the facts in this case the application, meaning and effect of the provisions of Article IX, Section 3, of the Constitution that the same person shall not be elected sheriff for two consecutive full terms; nor shall any person who acted as his deputy be elected successor to such sheriff, nor shall any sheriff act as deputy of his successor; nor shall he, during his term of service, or within one year thereafter, be eligible to any other office. In a proper proceeding, such as an election contest, a quo warranto proceeding, or a proceeding upon an information in the nature of a writ of quo warranto, in which the question of the eligibility of the Republican nominee for the office of sheriff could be properly presented for decision after his election should he be elected to that office, I would be inclined to hold that the foregoing constitutional provisions would render him ineligible for election to that office at the general election to be held in November of this year. But for the reasons set forth in this dissenting opinion, that question may not be determined in this original proceeding in mandamus. It will not do to say that a candidate may be declared to be ineligible in a proceeding in which that question may not be considered or determined because in a proper proceeding to determine that question his ineligibility would likely be readily and clearly established. It is just as logical to proclaim that a person could be tried and convicted in a suit in equity because the evidence there produced would undoubtedly result in a verdict of guilty in a criminal prosecution in a court of competent jurisdiction.
Concerning the function and the duty of the board of ballot commissioners, Judge Brannon, speaking for the majority of this Court in Marcum v. Ballot Commissioners of Lincoln, Logan, Mingo and Wayne Counties, 42 W.Va. 263, 26 S.E. 281, 31 L.R.A. 296, said: "Now, I confidently assert that, when a name of a candidate for office so certified comes before this board, it is its bounden duty to put it on the ballot, and that this duty is ministerial, because the board has no discretion as to putting it on. Ministerial is the nature of the duty of the board when but one certificate of nomination is before it." In the dissenting opinion filed by Judge English in that case, after quoting two syllabus points from the case of The Board of Supervisors of Mason County v. Minturn, 4 W.Va. 300, that "The writ of mandamus is a proper remedy to compel all inferior tribunals to perform the duties required of them by law; and when there is left to the inferior tribunal no discretion but to perform the duty in a particular way, by doing a certain specified act, then the inferior tribunal acts ministerially, and may be compelled by mandamus, not only to perform its duties, but to perform them by doing a certain specific act. When there is left to the inferior tribunal any discretion to perform its duty in any other *419 way than by doing a certain specific act, then such inferior tribunal can be compelled by mandamus to act and perform the duties required of it by law, but can not be directed what decision shall be made. In such case the court has no jurisdiction by mandamus, and the decision of the inferior tribunal can not be reviewed by mandamus. If any errors have been committed, the proper mode of review is by certiorari.", made this sound and significant pronouncement: "If it was otherwise this Court need not compel the board of ballot commissioners to act, but would act for them, and there would be nothing left for them to do." By the decision of the majority, this Court has acted for the board of ballot commissioners and, though the issuance of the writ compels it to act, there is, literally and in law, "nothing left for them to do."
Manifestly the majority seeks to justify its decision to award the writ on the theory that its refusal to do so would deny, renounce, or unduly restrict the jurisdiction of this Court in a proceeding in mandamus and that theory is evidently based upon the reasoning expressed in obiter dicta in the majority opinion in the Londeree case. These dicta, which are entirely unsupported by and are contrary to the prior decisions of this Court concerning the question of the eligibility of a candidate for a public office and the remedy of an election contest to determine that question are: "* * * since the contest can not arise until after the election, to hold that mandamus can not be invoked in such cases as to a nominee for office would have the effect of denying any remedy prior to the election and, where the candidate elected could not qualify as to the office sought, would have the effect of rendering the election as to that office a nullity. Surely no such result could have been contemplated. It would not tend to induce orderly elections."; and "No jurisdiction to determine such question was vested in the board of ballot commissioners by any statute. Therefore it had no jurisdiction to make any independent investigation in order to determine such qualification. But lack of jurisdiction of such a board can not be determinative of jurisdiction of a court having original jurisdiction in mandamus."
The substance of these statements is that though there may be no remedy to determine the qualification of a candidate until after his election, there should be a remedy which could be invoked before the election; and that because there is no such remedy jurisdiction in mandamus automatically arises to determine, before the election, the identical question that is determinable in an election contest after the candidate has been elected. Neither of the foregoing assertions is sound in principle or is supported by any authority. To the contrary are the many cases, some of which have been cited in this opinion, which hold that in mandamus the petitioner must show a clear legal right to the relief which he seeks, that such right must exist when the proceeding is instituted and is not determined but is enforced in such proceeding, and that the defendant is under an existing duty to perform the act which the petitioner has the right to have him perform. If these essential elements do not exist, and they do not exist in the case at bar, no court has jurisdiction to entertain such proceeding or to award the writ. If there is a need for a remedy to determine the eligibility of a candidate for public office before he is elected, such remedy must be supplied by legislative enactment and not by judicial legislation. It is evident that the petitioners in this proceeding do not have a clear legal right to the writ and that they seek to have such right determined in this proceeding instead of showing its existence when the proceeding was instituted. The board of ballot commissioners is under no duty to do what the petitioners seek to have it compelled to do. And surely there is no duty of that kind for this Court to perform. Refusal of the writ would not deprive this Court of its jurisdiction in mandamus; and in a proper proceeding it would continue to have all the jurisdiction that it has always had. By its action in awarding the writ it converts a mandamus proceeding into an election contest before an election occurs, *420 which it is not empowered to do, and assumes and exercises a jurisdiction which it never possessed. As pointed out in point 3 of the syllabus in The Board of Supervisors of Mason County v. Minturn, 4 W. Va. 300, which has never been disapproved but has been consistently adhered to by the subsequent decisions of this Court, there are instances in which "the court has no jurisdiction by mandamus." In my judgment the present proceeding is a typical example of a case in which this Court, notwithstanding its full and complete jurisdiction to compel by mandamus the performance of a duty by a public officer at the instance of a person who has the legal right to the performance of such duty and after deciding for the board a judicial question which the board has no power to determine, is without jurisdiction to award a writ of mandamus to compel it to perform an act which it has no lawful authority to perform.
It should be observed that in the dissenting opinion filed by me in the Londeree case I stated that I would have awarded the writ of mandamus sought but denied in that case. As previously pointed out however, and as indicated by the majority opinion and the dissenting opinion, the principal controverted question was whether Londeree, a resident of the United States Naval Reservation, was a qualified voter and involved his eligibility as a candidate for election to the office of mayor of the City of South Charleston. The question of the authority of the board of ballot commissioners to remove his name from the ballot to be used at the general election to be held in that city was not briefed, argued and considered as a controlling issue as it has been briefed, argued and considered in this proceeding. If that issue had been then so presented and considered, I would have denied the writ on the ground that the board of ballot commissioners was without authority to omit his name from the ballot and that this Court lacked jurisdiction in a mandamus proceeding to compel the board to perform an act which it had no lawful authority to perform.
For the reasons stated and under the numerous authorities cited and quoted from in this dissent I would deny the writ sought by the petitioners in this proceeding.
BROWNING, President (concurring).
I concur. However, upon the question of whether mandamus is a proper remedy in this proceeding to require the Ballot Commissioners to omit the name of Suder from the general election ballot, and as further answer to the contention that the courts are helpless in this matter except by quo warranto, a proceeding upon an information in the nature of quo warranto, or a contest subsequent to the general election, additional authority to that cited in the majority opinion is deemed appropriate.
In Brandon et al. v. Adams et al., 110 Cal.App.2d 835, 243 P.2d 26, a candidate for the office of judge was not qualified to hold that office for the reason that he was not a practicing attorney, but the clerk of the court, whose office is analogous to the Board of Ballot Commissioners in this State, took the position that he should place the candidate's name on the ballot since it was "not for him to determine the fact of eligibility or none." A writ of mandamus was issued directing the clerk "to omit from the ballot" the name of the ineligible candidate. Similar action was taken by the same court on the same day in Walter v. Adams et al., 110 Cal.App.2d 484, 243 P.2d 21. To the same effect are the California cases of Williams v. Chappell, 8 Cal.2d 455, 66 P.2d 147; Donham v. Gross et al., 210 Cal. 190, 290 P. 884; Felt v. Waughop, 193 Cal. 498, 225 P. 862. It will be noted in an examination of those cases that the word "omit" is used in the mandate without hesitation.
In O'Hanlon v. Calvert, 88 N.J.L. 33, 95 A. 631, a peremptory writ of mandamus was issued directing a clerk of a county court not to print the names of such nominees on the official ballot when such clerk had taken the position that he would put *421 such names on the ballot "unless otherwise directed by order of the court."
In People ex rel. Lempp v. Board of Elections, Sup., 178 N.Y.S. 516, 517, a sheriff died in office and a special election was held. The term of office under the Constitution was three years and the question arose as to whether the sheriff who had been elected at the special election would serve for the unexpired term or for the term of three years. The Constitution, art. 10, § 1, provided that sheriffs shall "be ineligible for the next term after the termination of their offices." In the opinion the court said: "* * * And if there is no vacancy the ballots should not contain the names of any candidate for that office. To permit it to be otherwise would produce confusion, as well as incur needless expense. This form of proceeding is the proper one in which to raise the question. * * *"
In State ex rel. Hehr v. Berry, 55 Ohio App. 243, 9 N.E.2d 699, 700, a statute provided that no person should be eligible to hold the office of county engineer "or be elected or appointed thereto" except a registered engineer. There was a demurrer to the petition for a writ of mandamus directing the members of the board of elections to omit the name of a candidate for that office alleged to be ineligible. The demurrer admitted the allegation of ineligibility and the writ was granted. In the per curiam opinion the court stated that no "jurisdiction is vested either in the board of elections of a county or in the secretary of state" to determine whether a person who has been nominated for office is eligible to be placed upon a ballot in a general election. The court then said: "Where, however, a court of competent jurisdiction in an action in mandamus brought for the purpose of compelling a board of elections to omit the name of such candidate from the ballot, on the ground of disqualification of the candidate, determines that the person nominated as above set forth does not possess the qualifications of a candidate for the office for which he is nominated, public interest and the law require that the ballot contain only the names of qualified candidates, and that the name of such disqualified person be omitted by the board of elections from the ballot. * * *" To the same effect is State ex rel. Barklow v. Appel et al., 165 Ohio 498, 137 N.E.2d 674.
In State v. Gray, 157 Fla. 229, 25 So.2d 492, a statute provided that if the number of legal candidates of any political party for any office shall not exceed the number required to be nominated to such office the names should not be printed on the primary election ballot, but that such candidates were nominated and entitled to a certificate to that effect. The petitioner sought a writ of mandamus to require the secretary of state to issue such a certificate to him as a democratic party nominee for the office of Solicitor of Dade County. Another candidate had filed for the office, but paid only $126 of the statutory fee for filing of $225 within the statutory period, but shortly thereafter paid the remainder of the fee. The court held that mandamus would lie commanding the respondent to omit the name of "the candidate who had not paid his filing fee within the statutory period." Perhaps it should be noted that three of the justices concurred in the majority opinion, one concurred specially, and two dissented.
The question arose in the Delaware case of State ex rel. Roman et al. v. Tatnall et al., 3 Terry 328, 32 A.2d 783, 785, as to whether Tatnall was eligible to be a candidate for the office of member of the council of the City of Wilmington since he was at that time holding the office of justice of the peace of the State of Delaware. The members of the Department of Elections for New Castle County were respondents in a petition for a writ of mandamus directing them to omit from the ballot the name of Tatnall, inasmuch as it was alleged that he was ineligible by reason of a provision of the statutory law of Delaware. The writ was granted as prayed for and the pertinent *422 portions of the opinion will be quoted from at some length:
"* * *.
"* * * He contended that, since the Department of Elections had no discretion nor any duty to pass upon the qualifications of any candidate concerning his eligibility, or the regularity of his nomination, or the constitutionality of any statute, It could not through the exercise of a peremptory writ of mandamus direct the Department so to do. * * *
"It was urged that the Department of Elections is an administrative body, and that the Act creating it does not expressly, or by implication, vest the Department with any judicial power, function or duty to inquire into the eligibility of any candidate, the regularity of his nomination, or the constitutionality of any statute; * * *.

* * * * * *
"The Attorney General under his next or second argument raised the question as to whether or not there exists an adequate remedy at law. He contended that Mr. Corsano's name must be placed upon the ballot, and that a determination concerning his eligibility for office or the regularity of his nomination would have to be inquired into by the members of council under Paragraph 42 of the City Charter, the pertinent provisions thereof being as follows: `It shall be the judge of the election returns and qualifications of its members, and of all officers of the corporation.'
"He contended that the State and not the relator herein is the real party in interest, and the question was not whether the relator has a legal remedy after election, but rather whether or not the general public which he represented has a legal remedy after election. He said that it must be assumed, and, as a matter of law, the council would protect the interest of the public in disqualifying anyone not eligible to be seated therein, and that the duty which the relator requested had been completely reposed by statute in City Council.
"The logical conclusion to be deducted from the argument advanced would be to say that the qualified electors of the Fifth Ward were not entitled to vote for a candidate in fact. I thought they were. I could determine no good reason why any ballot should contain the name of any person who could not in fact be a candidate. The very presence of his name on the ballot would only operate to deprive uninformed electors of their votes to the injury of one or more of the actual candidates, and to the possible perversion of the true popular will. To give to the certificate of nomination in this case the conclusive effect contended for would have been, it seems to me, to elevate form above substance. The law certainly contemplates a submission to the electors of a choice between persons who are candidates in fact, and this can only be accomplished by determining prior to the printing of the ballots whether or not Mr. Corsano was or was not a candidate in fact. * * *"
It is clear from the above cited cases that, upon the precise question of whether mandamus is the proper remedy under the circumstances of the instant case, the decision is in accord with the better reasoned authorities elsewhere, and which, incidentally, constitute the weight of authority.
It was clearly the intention of the Legislature, by Chapter 25 of the Acts of 1893, to invest in the citizens, taxpayers and voters of this State a remedy for the removal of a prospective candidate, who is clearly ineligible under the organic or statute law of this State, from an official election ballot, and such intention was recognized and given effect in Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302. To hold *423 otherwise is to deprive the voters of their franchise in regard to a particular office by forcing them to either abstain from voting for a candidate for that office or to cast their ballots for a person who cannot serve, thus rendering a free election a nullity and reposing the right to name the officer in the person or agency having the appointive power to such office. This, I submit, perverts the intention of the Legislature by returning to the case law as pronounced in the decisions prior to the enactment of Chapter 25, Acts of 1893, and adhering thereto as though such statute had never been enacted. It is true that there are methods, subsequent to an election, by which the title to an office may be determined. However, these remedieselection contest, quo warranto, or upon information in the nature of quo warrantoare not available to the electorate. Only a defeated candidate may contest his opponent's election. In the instant case, it is unlikely that the defeated candidate would incur the expense of such a proceeding, in the event Suder is victorious, when he could not thereby secure for himself the office of Sheriff of Upshur County. Quo warranto could be prosecuted only by the Prosecuting Attorney of Upshur County or the Attorney General in their discretion, two gentlemen whose identities are not now capable of ascertainment. If they declined to proceed in this manner they could not be forced to do so. A proceeding upon an information in the nature of quo warranto might be prosecuted by an "interested person." A casual examination of the majority and dissenting opinions in State ex rel. Morrison et al., v. Freeland, 139 W.Va. 327, 81 S.E.2d 685, is sufficient to indicate the almost impossibility that any such "interested person" exists in this case.
I would overrule or disapprove the language used in every decision of this Court subsequent to Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302, that is not in accord with the clear rule laid down in that case.