# CHARLESTON.

MULLENS v. DUNMAN *et als.*
VANOVER. v. FRANTZ *et als.*
LUSK v. MACE *et als.*
TATE v. MACE *et als.*
GROSS v. MACE *et als.*
SHUMATE v. MACE *et als.*

Submitted May 8, 1917.   Decided May 22, 1917.

1. ELECTIONS—*Notice of Contest—Sufficiency.*

A notice of contest in a municipal election, in which the contestant charges the commissioners of election with fraudulently and unlawfully exposing the ballots of persons who desired to vote secret ballots and making it known for whom they had voted; with destroying ballots which had been cast for contestant and substituting therefor others marked for contestee; with deceiving illiterate voters who desired to vote for contestant, and marking their ballots so as to cause them to be counted for contestee; with refusing to allow certain persons named to vote in the election, whose purpose was to vote for contestant; with allowing eleven persons named to vote, who were not qualified voters, who, it is alleged, voted for contestee; and with other specified, fraudulent and unlawful acts in conducting the election, in consequence of all which, it is alleged, the common council, sitting as a canvassing board, declared that the contestee had received a majority of all the votes cast, whereas in truth and in fact the contestant would have received a majority of at least twenty-five, of all the votes cast, if the fraudulent acts charged had not been committed, is sufficient on demurrer and motion to quash.   (p. 591).

2. SAME—*Notice of Contest—Construction of Statute.*

Sec. 1, Ch. 6, Code, should be liberally construed in order that the will of the people in the matter of choosing their public officers may not be defeated by merely technical objections.   (p. 592).

Error to Circuit Court, Wyoming County.

Election contest by A. J. Mullens against B. D. Dunman, and contests by five other petitioners against various contestees.   Motion to quash the notices sustained and proceedings dismissed by the Council of the Town of Mullens, and the contestant in each case objected and excepted, and from the circuit court's refusal of writs of certiorari, its denial of the

relief, its confirmation of the rulings of the common council, and its dismissal of the several petitions, contestants bring error.

*Reversed and remanded.*

*Toler & Moran,* for plaintiffs in error.

*Grover C. Worrell,* for defendants in error.

WILLIAMS, JUDGE:

Writ of error to a judgment of the circuit court of Wyoming county denying to A. J. Mullens and five other petitioners, writs of certiorari to have the judgment and findings of the mayor and common council of the town of Mullens reviewed, in election contests before them, between the several petitioners and the person declared by said mayor and council, sitting as a canvassing board, to have been elected to the offices of mayor, recorder and councilman, respectively, of said town.

At the municipal election held on the 4th of January, 1917, A. J. Mullens, F. M. Vanover, W. V. Tate, Dr. Robert Shumate, W. H. Gross, and Levi Lusk were candidates; respectively, for the office of mayor, recorder and councilmen on the "Peoples Party Ticket," and B. D. Dunman, S. D. Frantz, C. E. Mace, W. G. Lambert, D. R. Moss, F. S. Robertson and C. L. Whitlow were candidates, respectively, for said offices on the "Citizens Party Ticket," and the last named persons were declared by the canvassing board to be elected. Thereupon the aforesaid petitioners, severally, served notices upon them that they would contest the election of the several incumbents. The matter averred in each notice is the same, except the names of the contestants and the designation of the particular office for which he was a candidate, and the questions arising thereon are identical; hence, all of them can be disposed of in one opinion.

The present incumbents were in office at the time of the election and were candidates for re-election to the same offices they then severally held, on the Citizens Party Ticket, and the contestants were, severally, candidates for the same offices on the Peoples Party Ticket. The notices are very

lengthy, each containing more than eight pages of typewritten matter, and, stating briefly their substance, they specifically charge the mayor, recorder and councilmen with fraudulently and corruptly conspiring and confederating together to compass their own election; with corruptly designating certain named persons as registars to register the voters, and certain others named to act as commissioners of election, knowing that all of them were bitterly opposed to all the candidates on the Peoples Party Ticket and favorable to the candidates on the Citizens Party Ticket, and knowing they would be unfair to candidates on the first named ticket, in registering the voters and in conducting the election; with corruptly refusing to appoint any person as registrar, as commissioner, or as challenger of said election, who was favorable to any candidate on the Peoples Party Ticket, although requested in the manner provided by law to appoint two designated persons, who were qualified voters, one as commissioner and the other as challenger, to represent the Peoples Party; and with failing and refusing to meet before the election, after the registration books had been returned, for the purpose of examining, correcting and completing the registration list as required by law, although requested to do so. They charge the persons who were appointed as registrars, with unlawfully and corruptly failing and refusing to register certain named qualified voters, forty-seven in number, because said registrars believed the persons named intended to vote for the candidates on the Peoples Party Ticket; and with failing and refusing to meet as required by law, for the purpose of comparing, correcting and completing the registration list. They charge the commissioners of election with unlawfully and fraudulently refusing to allow a certain named person, who was selected in the manner provided by law as poll clerk by members of the Peoples Party, to serve as such, and arbitrarily appointing two other persons as poll clerks, well knowing they were both favorable to the candidates on the Citizens Party Ticket and unfavorable to the candidates on the Peoples Party Ticket; with refusing to allow a certain named legally qualified voter to serve as challenger, instead of another who had been appointed and had failed to appear at

the polls, although said person was designated as challenger by members of the Peoples Party in the manner provided by law; with forcibly excluding from the voting place both persons so designated; and with wilfully and fraudulently refusing to open the polls until 10:30 A. M., and closing them before sunset, and failing to provide two or more booths, or secret voting compartments in the election room, thereby preventing "more than fifty-six legally qualified voters" from voting, who, it is alleged, would have voted for the contestants, if they had been given an opportunity to vote. They charge the election officers with electioneering in the election room and soliciting voters to vote for candidates on the Citizens Party Ticket; with examining the ballots, which a number of voters had attempted to cast as secret ballots, and making it known for what particular candidates their ballots had been cast; with destroying a number of ballots that were cast for candidates on the Peoples Party Ticket, and substituting instead thereof ballots marked for the candidates on the Citizens Party Ticket; with deceiving and misleading a number of illiterate voters and so marking their ballots as to cause them to vote for other candidates than those for whom they informed said election officers they desired to vote; with unlawfully and fraudulently refusing to permit twenty named legally qualified voters to vote, who, it is alleged, would have voted for the contestants, if they had been allowed to vote. They aver that, because of the failure to register the aforesaid voters, and because many of the voters were informed and believed the election officers examined the voters' ballots and exposed how they voted, and because said voters feared their ballots would be examined and the manner of their voting disclosed, a large number of them was so intimidated that they refused to vote, all of whom, it is alleged, if they had been allowed to cast a secret ballot, would have voted for the several contestants. The names of the voters who were thus deterred from voting are given, and are thirty-six in number. They charge that the commissioners of election permitted eleven named persons to vote who were not qualified voters, ten, because they were not residents of the town, and one, because he was not twenty-one years old, all

of whom, it is alleged, voted for the contestees and against the contestants, and that the whole number of votes cast at the election was one hundred and fifty-four, including the aforesaid eleven illegal ballots and the aforesaid substituted ballots, all of which, it is alleged, were counted for contestees, and because thereof and of the refusal of the election commissioners to allow the twenty named persons to vote, and because of the intimidation and prevention of the thirty-six named voters from voting, and on account of other fraudulent, unlawful and improper conduct, before-mentioned, in conducting said election, the common council sitting as a board of canvassers, it is alleged, declared that the contestees had received a majority of all the votes cast, and awarded to each of them a certificate of election, whereas, the notice avers, ''in truth and in fact, had the said commissioners of election not destroyed the ballots legally cast for me at said election and substituted therefor ballots for you, as hereinbefore set forth; and had the said eleven illegal votes, aforesaid, not been cast and counted as aforesaid; and had the said commissioners of election permitted the said F. C. Scott and the nineteen other persons, named as aforesaid, to vote at said election; and had the said J. B. Pugh and the thirty-five other persons, named as aforesaid not been intimidated and prevented from voting at said election as aforesaid, I would have received a majority of at least twenty-five votes of all the votes cast in said town at said election, for said office of Recorder and should have been declared by the said common council duly elected thereto.''

Each notice was properly verified by the affidavit of the contestant, and the contestee thereby informed to appear before the council on the 23rd of January, 1917, if the said council should then be in session, and if not, then on the 30th of January.

The contestees appeared on the 30th of January, and filed written objections to the notices and moved to quash them, and to dismiss the several proceedings on the alleged ground that the notice was not sufficient in law: (1) Because they do not allege that the registrars and election officers were illegally appointed; (2) that even if it be true, as alleged, the

registrars refused for any reason to register any qualified voter, that was not a matter which either the council or the commissioners of election could have controlled and, there- fore, it had no affect upon the legality of the election; (3) because they do not allege that the clerks of the election were illegally appointed by the election commissioners; (4) that even if it be true the polls were not opened until 10:30 A. M., it ought not to vitiate the election, and if it did in fact have that effect, the contestants could not be declared elected; (5) that they fail to state the number of ballots, alleged to have been destroyed and others substituted therefor and marked by the commissioners of election as voted for contestees, which were intended by the voters to be cast for contestants; (6) that the charge of intimidating certain voters is not sufficient, because it does not state that said voters presented themselves at the polls and demanded their right to vote, and were then intimidated, or prevented from voting, the acts alleged not amounting to intimidation; and (7) because the notices fail to allege the number of votes cast for the contestants and con- sequently it is not made to appear that, if the eleven alleged illegal votes, which it is averred were cast for the contestees, were thrown out, the result of the election would be changed thereby.

The matter was heard at a regular meeting of the council on January 30, 1917, and the motion to quash the notices was sustained and the proceedings dismissed; and the con- testant in each case objected and excepted. They then, sev- erally, petitioned the circuit court for writs of certiorari, and that court refused the relief, confirmed the rulings of the common council and dismissed the several petitions.

The sole question presented is, whether or not the notices are sufficient in law to entitle contestants to a hearing on the merits. We think they are. If the facts alleged are true, and on the motion to quash we must so regard them, it was cer- tainly not a fairly and honestly conducted election. The no- tices charge serious and flagrant violations of law, showing sufficient grounds for an investigation on the merits of the several cases. They are not denied. The principal objection urged against them is, that they do not make it appear that

the results of the election would have been otherwise than as declared by the canvassing board, in any event. It is claimed they should have stated the number of votes polled for the several contestants, in order that a comparison of the number of votes polled for the respective candidates could be made, and the results of the election ascertained by subtracting from the votes of the contestees the eleven votes alleged to be illegal. It would no doubt have been in better form if the notices had stated the number of votes polled and counted for the contestants, as well as the number counted for the contestees, but that was not indispensable. The notices do state that, if certain things, specified therein as having been wrongfully and unlawfully done, had not been done, the results of the election would have been different, and the contestants would have been elected by a majority of at least twenty-five votes, and set forth the facts with particularity and at great length, on which the several contestants base their objections to the election of contestees; they name the persons whose votes they desire to contest, as having been illegally cast for the contestees, and give a list of the voters who would have voted for contestants, but who, they allege, were intimidated from voting on account of the wrongful acts and conduct of the election officers, and specifically aver that the results of the election would have been different, and contestants would have been elected, had not these unlawful things been done. If the averments are true the results certainly ought to have been different, but what ought to have been can only be determined by an investigation of the charges.

Of course the averments relating to what was done prior to the election in the matter of appointing registrars, their failure to register all the voters and improperly registering as voters persons not qualified to vote, are immaterial, as they do not affect the result of the election, and, therefore, can not be considered in a contest. But treating these averments as surplusage and eliminating them, the remaining charges are sufficient to make the notices good on demurrer and motion to quash.

Statutes providing for election contests should be liberally

construed, in order that the will of the people in the matter
of choosing their public officers may not be defeated by
merely technical objections. McCray on Elections, (4th ed.),
sec. 431; *Handley* v. *Gutridge,* 58 Ind. 302; *Gumm* v. *Hub-
bard,* 97 Mo. 311. In *Mann* v. *Cassidy,* 1 Brewster's Rep.,
(Pa.), 1, which was an election contest for the office of dis-
trict attorney in the county of Philadelphia, Judge Thomp-
son, in discussing the sufficiency of a petition filed by the
voters, under the Pennsylvania statute, which takes the place
of the notice required to be filed by the contesting candidates,
under the statutes of this state, says: ''The rule must not be
held so strict as to afford protection to fraud, by which the
will of the people is set at naught; nor so loose as to permit
the acts of sworn officers, chosen by the people, to be in-
quired into without an adequate and well-defined cause.''
This and other portions of his opinion are quoted by Judge
Agnew of the Supreme Court of Pennsylvania, in support of
his opinion rendered in certain election contests, reported in
65 Pa. St. 20. We quote from his opinion, at page 36, the fol-
lowing: ''It would be an intolerable technicality if the peti-
tioners were required to set forth in their complaint, within
ten days after the election, every illegal vote, every illegal
act of the election boards, and every instance of fraud. Such
a nicety would prevent investigation and defeat the remedy
itself. The general rule in all pleadings is that certainty to a
common intent is all that is required.''

The following authorities are also in point: *State ex rel.
Doerflinger* v. *Hillmantle,* 31 Wis. 574; *Berry* v. *Hull,* (N.
M.) 30 Pac. 936; and Payne's Law of Elections, sec. 997.

The judgments in the several cases will be reversed and
the causes remanded, with direction to the circuit court to
award the writs of certiorari as prayed for in the several pe-
titions, and for further proceedings to be had according to
law.

*Reversed and remanded.*