J. W. COPLEY, JR.

*v.*

HOWARD B. CHAMBERS

(No. 12126)

Submitted September 6, 1961. Decided November 7, 1961.

GIVEN, JUDGE, dissenting

*Poffenbarger & Bowles, Martin C. Bowles, Leonard H. Higgins,* for appellant.

*Jenkins & Jenkins, John E. Jenkins, Jr.,* for appellee.

BROWNING, JUDGE:

On November 21, 1960, the appellant, Howard B. Chambers, hereinafter referred to as Chambers, was certified as having been elected to the office of Sheriff of Mingo County, West Virginia, at the general election held in that county on November 8, 1960. On the same day, he was served with a "Notice of Contest of Election" by J. W. Copley, Jr., hereinafter referred to as Copley, his opponent for that office, the notice averring the candidacies of the respective parties; that the Commissioners of the County Court, sitting as a Board of Canvassers, did, on the 16th day of November, ascertain the results of the election for the office of Sheriff of Mingo County and certified that Chambers was duly elected to that office for the term beginning

January 1, 1961; and assigning as ground for the contest that Chambers was ineligible, under the provisions of Article IX, Section 3, of the Constitution of this State, to be elected or to serve as Sheriff of Mingo County for the full term beginning January 1, 1961, for the reason that Chambers had been duly appointed, qualified and served as a deputy sheriff, for the month of January, 1957, under Thurman Chambers, who had been duly elected and qualified as Sheriff of Mingo County for the full term beginning January 1, 1957. The notice then alleged that Thurman Chambers died on January 28, 1957, and Chambers was appointed to the office of Sheriff of Mingo County and has since served in that capacity.

The original notice was filed with the County Court on November 23, 1960, and on November 30, 1960, Chambers answered, admitting the allegations of the notice, except insofar as they assert that he is not qualified or eligible to be elected or to serve as Sheriff of Mingo County for the term beginning January 1, 1961, which allegation he specifically denied and alleged his election and qualification, at the general election held in Mingo County on November 4, 1958, to the unexpired two-year term of Sheriff of that County. The answer then alleges that the "Notice of Contest" is insufficient in that: (1) it was not properly served upon Chambers in accordance with the provisions of Code, 3-9-2, and (2) it was not filed at the next regular term of the County Court of Mingo County following the declaration of results of the election, as required by Code, 3-9-3.

The answer further alleges that his eligibility was determined by this Court prior to the November 8, 1960, election in the proceeding styled *State ex rel. Cline v. Hatfield et al.*, 145 W. Va. 611, 116 S. E. 2d 703, and that he is not within the prohibition of Article IX, Section 3, of the Constitution of this State.

By an order entered November 23, 1960, "at a regular term of this Court, begun on this day" the County

Court of Mingo County ordered the matter set for hearing on December 14, 1960, "which is a regular term of this Court". On December 7, 1960, the county court, on motion of Copley, for the reason that Chambers' answer questioned its jurisdiction to hear the contest prior to January, 1961, "passed" the matter generally. Subsequently, on January 4, 1961, "the beginning of the January session of the County Court", the county court entered an order, reciting that counsel for Copley "again presented the notice of contest and asked that the same be filed", setting the matter for hearing on January 11, 1961. On January 11, 1961, Chambers appeared and filed an amended answer which, in addition to the allegations contained in his original answer, further alleged that, subsequent to the election of November 8, 1960, the County Court of Mingo County sat as a canvassing board to ascertain the result of the election, found that he had received the higher number of votes, issued a certificate of election to him and subsequent thereto, on January 4, 1961, he was duly sworn in as Sheriff of Mingo County for the four-year term beginning January 1, 1961.

At the hearing on January 11, 1961, Copley introduced as exhibits the following excerpts from the records of the County Court of Mingo County: an order setting the meetings of the County Court, for the calendar year ending December 31, 1958, for the first Wednesday in the months of January, April, July and October; an order entered December 28, 1960, directing the clerk to close the "present session" on December 31, 1960, setting the next regular session on Wednesday, January 4, 1961, and prescribing like sessions on the first Wednesday of April, July and October, and further designating every Wednesday during the year 1961 as a regular meeting day for each of the sessions; the bond and oath of Thurman Chambers as Sheriff for the term of office beginning January 1, 1957; a letter or directive, over the signature of Thurman Chambers, Sheriff, appointing a list of named persons as deputies and designating their salaries, on

the face of which appears the name of Howard Chambers, designated as Field Deputy at a salary of $300.00 and on the back of which appears the signatures, as commissioners, of the members of the county court and the notation, "Comm. Record - 19, Page 317, 318"; the bond and qualification of Howard Chambers as Sheriff, reciting his appointment as Sheriff on January 29, 1957, and that he had submitted the same list of Deputies "that had been submitted and approved by the Court on January 1, 1957, by the former Sheriff, Thurman Chambers. There was no changes in the appointments and salaries are to be the same, as in the former order."; the bond of Howard Chambers reciting his appointment as Deputy Sheriff for a term of four years beginning January 1, 1957, executed December 29, 1956; the office copy of a check purportedly issued to "Howard Chambers - Sheriff" on February 15, 1957, for "Feb. Salary * * *"; the office copy of a check purportedly issued to "Howard Chambers - Deputy Sheriff" on January 15, 1957, for "Jan. Salary * * *"; the office copy of a check purportedly issued to "Thurman Chambers - Sheriff" for "Jan. Salary * * *"; and, the appointment of Howard Chambers as Sheriff, on January 29, 1957, "until a new Sheriff is elected". Chambers introduced as an exhibit his "Certificate of Election" to the term beginning January 1, 1961.

Copley also introduced the testimony of the Chief Deputy County Clerk, who testified that: no regular terms had been set by the County Court for the years 1959 and 1960 but that the Court had met pursuant to the terms set for the year 1958 and accordingly had met in October of 1960; the court, sitting as a board of canvassers, completed the canvass on November 16, 1960, there were no meetings subsequent to November 16, 1960, until November 23, 1960; and, the term in which the Court was setting on November 23, 1960, began in October, 1960, though there was no order other than the one of 1958, setting a term for that time. An office deputy of the county clerk testified that it was customary for the county commissioners to sign their

names on a writing or document to signify their approval, such as was done on the directive of Thurman Chambers appointing various deputies, including Chambers, but that there was no actual order by the county court confirming such appointments. Copley testified that many of the deputies serving under Chambers either held, or were related to persons holding, positions as committeeman or committeewoman for the Democratic party in Mingo County.

Chambers testified substantially to the facts alleged in his original and amended answers.

The county court found Chambers to be ineligible to serve as Sheriff of Mingo County for the term beginning January 1, 1961, revoked and nullified the certificate of election theretofore issued and declared a vacancy to exist in such office, which ruling was affirmed by the Circuit Court of Mingo County on May 10, 1961.

On this appeal, Chambers makes twenty-eight assignments of error which may be grouped as follows: (1) The County Court was, for various reasons, without jurisdiction to hear and determine the contest; (2) The manner in which the hearing was conducted, that is, that the public was excluded from the hearing and the presiding officer did not consult with other members; (3) He never legally acted as Deputy Sheriff of Mingo County; and (4) He is not ineligible to hold the office of Sheriff of Mingo County under the provisions of Article IX, §3. The Court is unanimously of the opinion that the assignments of error under the first three of these groupings are without merit.

The statutory provisions relating to the procedure to be followed in election contests are as follows:

"A person intending to contest the election of another * * * shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention * * *. If the contestant object to the legality of the election, or the qualification of the

person returned as elected, the notice shall set forth the facts on which such objection is founded. * * * If new facts be discovered by either party after he has given notice as aforesaid, he may, within ten days after such discovery, give an additional notice to his adversary, with the specifications and affidavit prescribed in this section." Code, 3-9-2.

"* * * The notice of contest shall be presented to the county court at its first term after the same is delivered to the person whose election is contested, * * *" Code, 3-9-3.

Code, 7-1-2, provides that the county court of each county shall hold four regular sessions in each year at such times as may be fixed upon and entered of record by the court, but does not provide that such sessions or terms must be fixed annually. It appears from the record that the last order entered by the County Court of Mingo County designating sessions or terms of that court was in 1958 and fixed the first Wednesday in the months of January, April, July and October for such terms. The testimony of the clerk of that court was to the effect that although no subsequent order was entered the court continued to hold regular sessions in conformity with that order until the entry of the order of December 28, 1960, which provided for the next regular term to be held on January 4, 1961, and like sessions on the first Wednesday of April, July and October of that year. It is apparent, therefore, that the order of the county court of November 23, 1960, "at a regular term of this court, begun on this day" was erroneous. However, when Chambers objected to the court hearing this matter on that date for the reason that such date was not within the first regular term of the county court of that county after service of the notice of contest upon Chambers, as required by the above quoted provisions of Code, 3-9-3, and for that reason the court was without jurisdiction, the court acceded to such objection and "passed" the matter to the first day of the next regular term of the court which, as heretofore stated, convened on January 4,

1961. Copley again presented his notice of contest to the court on the last mentioned date. Chambers appeared, filed his amended answer, and the matter was heard upon the issues thereby presented. The County Court of Mingo County properly acquired jurisdiction of the case.

The third paragraph of the notice of contest alleges, among other things, that "* * * Howard Chambers, is not qualified to be elected or to serve as sheriff of Mingo County, West Virginia, for the term beginning January 1, 1961, on the following ground: that the said Howard Chambers was appointed, qualified and acted as deputy sheriff of Mingo County, State of West Virginia, for the month of January, 1957; * * *." In neither the answer nor the amended answer is this allegation denied, but on the contrary is admitted by the statement that "He admits the allegations in paragraph three of said notice, except those allegations * * *", and thereafter the answer makes reference to allegations in paragraph three other than the statement above quoted. Furthermore, the evidence shows that: Chambers was appointed by his father as a field deputy and the letter containing his name, along with the other deputies appointed prior to January 1, 1957, has on the back thereof the signatures of all three of the commissioners of the County Court of Mingo County and as heretofore stated this notation: "Comm. Record - 19, Page 317, 318"; the bond of Howard Chambers, reciting his appointment as such deputy beginning January 1, 1957; and the office copy of a check issued to "Howard Chambers - Deputy Sheriff" on January 15, 1957, for "Jan. Salary * * *"

Code, 6-3-1, as amended, provides: "(2) A Sheriff * * * may, with the consent of the county court duly entered of record, appoint any person or persons his deputy or deputies." While we expressly deprecate the method here used, that is, the county commissioners signifying their assent to a matter before them by endorsing their names on the back of a paper proposing the matter, and strongly urge the entry of a formal

order reciting in detail the acts and proceedings of a county court, the record clearly shows that Chambers was appointed, confirmed and acted as de jure deputy sheriff of Mingo County between January 1, and January 29, 1957.

The real issue before this Court in this case is whether Chambers is ineligible to serve as sheriff of Mingo County for the term beginning January 1, 1961, under the provisions of Article IX, Section 3, of the Constitution of this State, which reads as follows:

> "The same person shall not be elected sheriff for two consecutive full terms; *nor shall any person who acted as his deputy be elected successor to such sheriff*, nor shall any sheriff act as deputy of his successor; nor shall he, during his term of service, or within one year thereafter, be eligible to any other office. The retiring sheriff shall finish all business remaining in his hands, at the expiration of his term; for which purpose his commission and official bond shall remain in force. The duties of the office of sheriff shall be performed by him in person, or under his superintendence." (Italics supplied)

Chambers' eligibility to be *elected* to this office was challenged by seven citizens, voters and taxpayers of Mingo County in this Court in an original proceeding in mandamus in which the petitioners sought to compel the respondents, the ballot commissioners of Mingo County, to omit his name from the ballot as the Democratic candidate for sheriff of that county. That proceeding is styled *State ex rel. Cline, et al. v. Hatfield, et al.,* 145 W. Va. 611, 116 S. E. 2d 703, and was decided by this Court on September 20, 1960. The writ was denied upon this division of the Court: Two Judges were of the opinion that mandamus was not a proper remedy to compel a board of ballot commissioners to omit from the official ballot the name of a duly nominated candidate for office prior to the general election; two judges were of the opinion that mandamus was a proper remedy and would have granted the writ; and one judge was of the opinion that mandamus was a proper remedy, but that the "per-

tinent constitutional provisions do not prohibit the respondent candidate'' from being elected to the office of sheriff. However, in the case of *State ex rel. Zickefoose et al., v. West et al.,* 145 W. Va. 498, 116 S. E. 2d 398, decided July 12, 1960, by a three to two decision, this Court granted a writ of mandamus directing the board of commissioners of Upshur County to omit from the ballot the name of Eugene Charles Suter, who was the Republican nominee for sheriff of that county. Suter had served three years as deputy to the sheriff of Upshur County, resigned December 31, 1959, and became the nominee of his party in the primary election held on May 10, 1960.

The facts in the case of *State ex rel. Duke, etc. v. O'Brien et al.,* 145 W. Va. 600, 117 S. E. 2d 353, also an original proceeding in mandamus, were identical with the facts in the *Zickefoose* case with the exception that Harpold, the nominee for sheriff of Jackson County, served as deputy to the sheriff of that county from January, 1957, until his resignation on December 26, 1959, and in that case, following the holding of the Court in the *Zickefoose* case, the writ was awarded directing the ballot commissioners of Jackson County to remove Harpold's name from the general election ballot. The facts in the instant case differ in this regard from the *Zickefoose* and *Duke* cases: Chambers served only twenty-nine days as a deputy to his father and upon his father's death was appointed by the county court to serve as sheriff until the next general election. He was nominated by his party and elected by the voters of Mingo County at the November, 1958, election for the unexpired term, his eligibility for the office not being questioned. Chambers was nominated by his party in the primary election of May, 1960, and received a majority of the votes cast for the office of sheriff at the November, 1960, election. Upon that state of facts it is contended by counsel for Chambers that he was not elected ''successor'' to his father, but that he was elected to succeed himself as sheriff. In his concurring opinion in *State ex rel. Cline et al. v.*

*Hatfield et al.,* 145 W. Va. 611, 116 S. E. 2d 703, Judge Given was of that view also and for that reason was of the opinion that Chambers was not ineligible under the pertinent constitutional provision. It is true that the language used in Article IX, Section 3, with reference to the prohibition against a sheriff being elected for two consecutive terms and the language used relating to one of his deputies succeeding such sheriff is different. The pertinent portions of that section will be again quoted: ''The same person shall not be elected sheriff for two consecutive full terms; nor shall any person who acted as his deputy be elected successor to such sheriff, nor shall any sheriff act as deputy of his successor; * * *.'' In *Gorrell v. Bier,* 15 W. Va. 311, this Court held that the above quoted provision of Article IX did not render a sheriff ineligible for election to an unexpired term occurring subsequent to the expiration of his regular term. Emphasis was placed upon the word ''full'' in the first clause of the section. There is no such provision relating to a deputy succeeding ''such sheriff'' and this precise question has not heretofore been decided by this Court. The pertinent provisions of Article IX, Section 3, have remained essentially unchanged since the original Constitution of this State was adopted in 1863. While this Court must find the meaning of the applicable section of the Constitution from the language used, it is permissible to do so, and we have examined with care the discussion in the ''Debates and Proceedings of the First Constitutional Convention of West Virginia'' relative to the adoption of the provisions of Article IX, Section 3.

The relevant portion of Article VII, Section 5, Constitution of 1863, which thereafter became the present Article IX, Section 3, under the Constitution of 1872, as originally proposed, provided that ''* * * All the said county officers shall hold their offices for two years from the first day of October next succeeding their election, except the sheriff, whose term of office shall be three years. The same person shall not be

elected sheriff for two consecutive full terms, nor shall the deputy of any sheriff be elected his successor; * * *'' There were those who advocated that the office of sheriff should be limited: to a term of one year, with no prohibition against reelection; to two years with a limitation of two terms; and, to two, three and four years with a prohibition as to reelection for consecutive terms. In contending for a four year term as presently limited, Mr. Brown of Kanawha County, after referring to the past experiences under the Virginia Constitution of 1850-51, stated: ''When they cannot secure a re-election for the second term (or the third, whichever the prohibition is in the Constitution), the same thing is attained by running a deputy for sheriff and the sheriff becomes the deputy in turn of the newly elected party. Now, that is the practice, and the result is that collections of taxes go neglected and everything is delayed, deferred, favoritism shown, in order to make friends for the second term. Now, as the gentleman remarked, it is manifest if you make it at once four years and forbid re-election for a consecutive term and forbid a sheriff from being a deputy for his successor, he has no inducement but to go forward and discharge his duty * * *'' and again, ''* * * we should permit neither him nor his deputies to become his successor, nor permit him to be the deputy of his successor, which will accomplish the same end. In most of the counties I know it is the rule that the deputy this year is to be the sheriff the next, and the outgoing sheriff then becomes his successor's deputy; and then at the end of that term the tables are to turn again; and thus it is kept up by turns as long as these men can effect the election of each other. Now, the object is to end that.'' Mr. Dering of Monongalia County, remarked: ''* * * And so the sheriffs have been a self-perpetuating body. The sheriffs in our county have been handing down the office to either themselves or their deputies ever since the change in the constitution. It is important, sir, that we should so guard the office of the sheriffalty that they will be held properly amendable to the people and be

confined to one term of office, themselves and their deputies both being made ineligible thereafter.'' Mr. Smith, a resident of Kanawha County, seated as the delegate from Logan County, stated: ''I concur entirely in what the gentleman from Monongalia has said * * *. That thing has been practised in our county to a very considerable extent and was the cause of a good deal of exception. * * * I am opposed to two terms and to the election of a deputy.'' The motion to make the term four years was carried twenty-three to fourteen.

After that had been determined, Mr. Van Winkle moved to amend the sentence relating to a deputy sheriff and to insert this language: ''And no person who has acted as his deputy within one year shall be elected as his successor.'' Mr. Brown of Preston: ''What is the necessity of inserting the words: 'within one year?' 'Nor shall any person who has acted as his deputy,' I think would cover the whole ground.'' Mr. Van Winkle: ''My view was this, that a deputy who had abandoned the office a year previously was so disconnected with it—'' Mr. Dille: ''Better embrace the full term: 'Nor shall any person who has acted as his deputy during his term be elected his successor.' '' Mr. Brown of Kanawha: ''I confess that if the motion of the gentleman from Wood were confined to one year, I should have no objection. But if it is made to apply to the whole four years, then it operates to the exclusion of all the men perhaps who by their official acts have, to some extent, qualified themselves for the office. The only object in excluding is to avoid the evil of a party preparing himself by virtue of his office, using it for the purpose of re-election. * * *'' Mr. Stevenson of Wood, in opposing the amendment, said ''that a deputy, in many places at least, in many populous towns, where there is a large tax collected, can very well afford to resign one year before the expiration of the term in order to be elected sheriff, and would do it in many cases. That is an objection to this last amendment. I am in favor of

the other; * * *'' The amendment as to one year was rejected, whereupon Mr. Sinsel moved to insert in its place this language: "within two years.", which was similarly rejected. Mr. Dering: "I am opposed to the motion of the gentleman from Wood. I think to make your sheriff ineligible for one term, it is highly important we should so make his deputy." Mr. Willey: "That is precisely the motion." Mr. Van Winkle's amendment, less the words "within one year", was thereupon agreed to and a further amendment, by inserting the words "nor shall said sheriff act as the deputy of his successor" was passed. Volume II, Debates and Proceedings of the First Constitutional Convention of West Virginia, pages 577-597.

The 5th syllabus point in *State ex rel. Zickefoose et al. v. West et al.,* 145 W. Va. 498, 116 S. E. 2d. 398, is controlling upon the issue here under consideration even though the facts of that case and the instant case are not identical. It provides: "A person who has acted as deputy for a sheriff duly elected to a full term is ineligible, under the provisions of Article IX, Section 3 of the Constitution of West Virginia, to be elected sheriff for the next succeeding *full* term." (Italics supplied) In the opinion of that case this Court said:

> "Counsel for Suder in his brief contends that this proceeding to determine the question of eligibility is premature until Sheriff Tenney shall have completed serving his present full term which will expire December 31, 1960. The constitutional provision will admit of no such construction or application. Such would be contrary to the manifest spirit of the entire provision. On the question of the eligibility of a deputy to be elected sheriff for the succeeding term, the spirit of the constitutional language is emphasized by language pertaining to a situation presenting the converse of the present one: that is, a situation of a sheriff later undertaking to become a deputy. That language is: '* * * nor shall any sheriff act as deputy of his successor, * * *.' Such language does not say that a sheriff may act as deputy for his successor during the fourth year of the latter's term

of office, or that he may act as deputy if he resigns as sheriff prior to the expiration of his preceding four-year term. Here again we note a significant absence of such language as 'full' term or any other language of like or similar import."

This Court holds that Chambers was ineligible to be elected sheriff of Mingo County at the November 8, 1960, general election for the full term beginning January 1, 1961, because of the inhibition contained in Article IX, Section 3, that no person who has acted as deputy to a sheriff shall be elected successor to such sheriff. The order of the County Court of Mingo County and the judgment of the Circuit Court of Mingo County so holding will be affirmed.

*Affirmed.*

GIVEN, JUDGE, dissenting:

The facts in the instant case are suggestively different from the facts in the cases relied on. In the instant case two constitutionally recognized terms of office intervened between the time the candidate served as a deputy sheriff, and the beginning of the regular term now involved. The defendant Chambers, therefore, was not a candidate for a term succeeding his father, under whom he served as a deputy, but as successor to the person who served the last intervening term. That he happened to have been the person who served that intervening term does not, in my view, bring him within the class of persons declared ineligible by the constitutional provision. The effect of the majority holding is to extend ineligibility to the office of sheriff to a class of persons not intended by the constitutional provision.

The controlling constitutional provision relating to the question involved, the only pertinent provision, Section 3, Article IX, reads: "The same person shall not be elected sheriff for two consecutive full terms; nor shall any person who acted as his deputy be elected successor to such sheriff, nor shall any sheriff act as deputy of his successor; nor shall he, during his term

688

of service, or within one year thereafter, be eligible to any other office * * *".

It is significant that the only language of that section which is pertinent is the phrase "nor shall any person who acted as his deputy be elected successor to such sheriff". All language of the section prior to such phrase relates only to the ineligibility of a person who has been elected sheriff for a "full term". All pertinent language of the section subsequent to such phrase relates only to the ineligibility of the person who was previously elected sheriff to serve as a deputy, or to serve in some other office. Yet, by some reasoning not apparent to me, the majority now reaches the conclusion that a sheriff, the officer against whom the supposed evil was principally directed, may be elected for a "full", second or consecutive term, provided his first term was at least one day short of a "full term", or be elected to any part of the succeeding term less than a "full term", but a person who has served only as a deputy may not serve a single day of the second or consecutive term if he served as deputy for a single day of the prior term. See *Gorrell v. Bier,* 15 W. Va. 311, cited with approval in the majority opinion, in *State ex rel. Duke v. O'Brien,* 145 W. Va. 600, 117 S. E. 2d 353, and in *State ex rel. Zickefoose v. West,* 145 W. Va. 498, 116 S. E. 2d 398.

Yet another anomaly: In *State ex rel. Cline v. Hatfield,* 145 W. Va. 611, 116 S. E. 2d 703, a majority of this Court held that mandamus was the proper remedy to test the eligibility of Chambers to be elected to the very term of office now involved, and refused to issue a writ requiring the removal of his name from the official ballot, holding, in effect, that Chambers was eligible to be a candidate for election to the office for that term, and that the voters of Mingo County were entitled to vote for him for that office for that term, but, after the election, though he received an almost unexplainable majority vote, the Court now holds him ineligible to have been elected, or to serve, as such officer, and effectively destroys the right of the voters

of Mingo County to elect a sheriff for that term. Can anyone reasonably argue that such a result was intended by those who framed our election laws, constitutional or statutory?

Though the majority opinion points out a substantial factual difference in the facts in the instant case and those in the *Duke* and *Zickefoose* cases, that the defendant Chambers is not in fact the successor to his father, two separate terms, an appointive term and a (short) elective term having intervened, the only rule of law applied in the instant case is the rule correctly applied in the prior cases.

It is significantly noticed that the pertinent and constitutional phrase says nothing concerning any term of office, regular, short or appointive, though the Constitution clearly makes provision for appointive terms and for elective short terms. The only restriction even indicated is that a deputy shall not be "elected successor" to a sheriff under whom he served as deputy, yet, somehow, the majority converts the meaning of "successor" to the meaning of a "previous term", and denies eligibility to a person who sought the office after the expiration of two constitutionally provided terms, one appointive and one elective.

It has been suggested that the constitutional phrase pertinent to the eligibility of a deputy, quoted above, was intended to have the same effect as the language used in the provision relating to the ineligibility of a person to the office of sheriff, for the reason that the phrase contains the words "such sheriff". While it seems clear that the restrictive features as to the respective officers were not intended to be the same, if the suggested intention can be gathered from the whole language, there exists no justification for reaching results exactly opposite as to the ineligibility of a person who has served as sheriff and one who has served as a deputy. The words "full term" should not be accorded one meaning in one case and a wholly different meaning in the other, as the majority actually

does, though applied to situations covered by the same sentence.

The majority also quotes extensively, and relies heavily on, pertinent statements of individual members of the constitutional convention which adopted the language of the pertinent section. Such history is, of course, helpful in determining the purpose of the adoption of the provision, but, even as indicated in the majority opinion, the views and expressions of individual members of the convention do not necessarily represent or reflect the thinking or intention of the majority who approved the adoption of the language used. Such intention depends on, and must be determined from, the language actually adopted, there being no contention of any ambiguity. The history quoted indicates no report of any committee as to any intention, or any adoption of any recommendation of any committee, as to the intended meaning of the language used, and the statements of the speakers, quoted in the majority opinion, most certainly indicate a view that any restrictions relating to the election of a deputy should be less prohibitive than those relating to the election of a sheriff to succeed himself. Moreover, the purpose of the provision is not in question; only the extent of the restrictions imposed are in any way involved. All apparently agree that the purpose of the provision was to preclude a supposedly objectionable or vicious practice of succession to the office of sheriff. But why should such restrictions be made more prohibitive as to a deputy than as to a person who has served as sheriff? There is most certainly nothing in the statements quoted, or in the language of the constitutional provision, indicating any such intention, and I can think of none.

Further consideration of the proposition necessitating this dissent is found in the concurring opinion in *State ex rel. Cline v. Hatfield, supra,* and pertinent authorities there cited. Being of the views expressed herein, and in the concurring opinion mentioned, I respectfully dissent.