STATE OF WEST VIRGINIA *ex rel.* MARIO J. PALUMBO

*v.*

THE COUNTY COURT OF KANAWHA COUNTY, WEST VIRGINIA, *a corporation,* AND S. GROVER SMITH, JR., E. S. "BILL" THOMPSON AND J. KEMP McLAUGHLIN, *as commissioners of said* COUNTY COURT OF KANAWHA COUNTY, WEST VIRGINIA, AND S. GROVER SMITH, JR.

(No. 12597)

AND

STATE OF WEST VIRGINIA *ex rel.* JAMES W. LOOP

*v.*

THE COUNTY COURT OF KANAWHA COUNTY, WEST VIRGINIA, *a corporation,* AND S. GROVER SMITH, JR., E. S. "BILL" THOMPSON AND J. KEMP McLAUGHLIN, *as commissioners of said* COUNTY COURT OF KANAWHA COUNTY, WEST VIRGINIA, AND L. E. THOMPSON

(No. 12598)

Submitted September 7, 1966. Decided By Prepared Order 9-13-66 (Opinion Filed 9-27-66)

BROWNING, JUDGE, dissenting.

*Charles M. Love, John A. Amick, Kenneth L. Coghill,* for relator.

*Charles G. Peters, George S. Sharp,* for respondents.

BERRY, JUDGE:

These cases which were consolidated for the purposes of argument and decision involve an identical point in the construction of a West Virginia Statute, with reference to in what term of a county court an election contest must be held. They arise out of a recount held in Kanawha County to determine the nominee for a position on the Democratic ticket for County Court and to determine the nominee for the fourteenth position on the Democratic ticket for House of Delegates, there being fourteen members of the House in that County to be elected in the general election of November, 1966. The Petitioners, Mario J. Palumbo and James W. Loop, were denied places on the general election ticket and demanded that the county court docket a contest.

The case arises specifically out of the refusal of the county court to set the contest for hearing in the July term of the court which was in progress at the time the recount ended and still in progress after the notice of contest had been properly served and presented to the county court for docketing. The court took the position that under the statute applicable the contest could not be heard until the term starting after the contest notice was presented to the court, and that term did not begin until October 1, 1966, which would have left insufficient time in all probability to determine the contest, appeal the results, and have the winner placed on the ballot for the general election in November, 1966.

Petitioners Palumbo and Loop each presented a petition praying that his contest be docketed immediately and proceedings started without delay.

Rules were issued by this Court on August 13, 1966, against the County Court and the various other parties concerned, commanding them to show cause why peremptory writs of mandamus should not be awarded as prayed for. These rules were returnable September 7, 1966, and the proceedings were consolidated and sub-

mitted to the Court for decision on arguments and briefs.

On September 13, 1966, an order was entered by the Court granting the writs prayed for and this opinion is now prepared giving the reasons for the Court's decision.

Petitioners Palumbo and Loop were candidates for nomination in the primary election held in Kanawha County on May 10, 1966. Palumbo ran against an incumbent member of the County Court, S. Grover Smith, Jr., who was declared the nominee by the Board of Canvassers. Similarly, Loop was declared the fifteenth place member out of a large field of which only fourteen could be nominated. In order to be nominated, he would have had to displace at least the fourteenth place man, L. E. "Duck" Thompson, who was certified as holding the fourteenth place.

After the canvass but prior to the certification of the winners, the two petitioners demanded a recount, which was held by the county court sitting as canvassers. In the process of this recount, the official papers in connection with the election were examined in many precincts, but the county court, acting as a board of canvassers, again on July 20, 1966, certified the same winners as had been certified in the canvass.

Within ten days following this last certification, the petitioners gave detailed notices to the adverse parties that they would ask for a contest in accordance with Chapter 3, Article 7, Section 6, Code of West Virginia, alleging mainly as grounds that so much fraud and illegality had occurred in ten precincts in the case of Palumbo and in three precincts in the case of Loop as to taint the entire vote of those precincts and to make it impossible to ascertain the correct result; and the notices stated that petitioners, therefore, would ask that all the returns of these precincts be thrown out. Various allegations of fraud were detailed, such as deceased persons voting, persons voting from addresses

that no longer existed, the signing of poll slips for persons who did not go to the polls through illness or other cause, buying of votes, and improper interference by precinct officials with voters. The throwing out of these returns would make Palumbo and Loop winners in their respective contests for nomination.

Following the service of these notices of contest, they were presented with proof of service to the county court on August 1, 1966, which was a date still in the July term of the court, and demand made that the contest be set for hearing. The county court, by a two to one vote, refused to docket the contest on the ground that it could not legally be set until the next regular term which would commence on October 1, 1966. This action of the court in refusing to hear the contests in the July term is the reason this case arose and writs of mandamus were sought from this Court to compel the county court to hold the hearings without delay.

A collateral issue was raised by an order of the county court entered July 13, 1966, which is discussed at length in this mandamus proceeding in the pleadings and briefs. Apparently for about fifty years the court had been accustomed to have four terms a year as required by the Constitution and various statutes, and at least for recent years an order had been entered by the court at its first meeting in January fixing the commencement of these four terms at the first secular or working day in each quarter of the year, that is, approximately January 1, April 1, July 1, and October 1, and these terms ran through each quarter to the last day of the quarter, so that the court was in continuous session, except for holidays or Sundays which might happen to intervene at the time the quarters of the year changed.

Through some inadvertence, no such order fixing terms was entered for the year 1966, but the court proceeded to hold its terms in accordance with previous years, so that it actually followed without an order the same schedule it had previously followed with an order.

On July 13, 1966, the court, in an effort to correct this supposed failure to comply with the law requiring the setting of terms, entered what the parties refer to as a nunc pro tunc order attempting in the middle of the year to set the terms as they had formerly been set. This merely confirmed what was already being done in the way of holding terms. Petitioners allege that this order setting the next term for October was entered in an attempt to deprive them of their right to be heard, and that it is an improper nunc pro tunc order.

To the petitions for writs of mandamus, respondents filed joint and several answers and demurrers. Both answers and demurrers in effect raised the main legal question as to when this contest should have been docketed. The answer raises collateral points, such as that the nunc pro tunc order was entered in good faith and for no purpose of depriving petitioners of their rights, and that the petitioners were guilty of procrastination in the recount procedure and the respondents were not so guilty.

Code 3-5-20, as amended, provides that contests as the result of primary elections for state offices or offices in political subdivisions of the state shall be conducted under the same procedure as provided for contests in a general election involving county offices. This provision, of course, is only applicable to the procedure where appropriate. Code 3-7-6, as amended, provides the machinery for such general election contests in regard to serving a notice of the contest on adverse parties. Code 3-7-7, as amended, then provides for the manner in which the hearings shall be held, and the part thereof concerned in this present case says: "The notice of contest shall be presented to the county court at its *first term after* the same is delivered to the person whose election is contested, and the same shall be docketed for trial in such court." [Emphasis supplied.]

The case here then presents the question of the meaning of this one sentence, that is, does it mean that the

contestants must wait until the next regular term of the county court after they have served the notices on the contestees and presented them to the county court or does it mean the contests should be docketed and heard immediately after the notices are presented to the court when it is in session during a regular term.

It also appears to be the contention of the respondents that inasmuch as three months have elapsed from the day of the election, which was May 10, 1966, the county court has no jurisdiction to hear the contest. This is based on the provisions in Code 3-7-7, as amended, dealing with continuances by the county court of the hearing in a general election contest which reads in part as follows: "The hearing may be continued by the court from time to time, if it be shown that justice and right require it, but not beyond three months from the day of the election."

It will be noted that at the time the request for the contest was made in this case the county court refused to hold hearings of the contest and set them to be heard at the next regular term beginning October 1, 1966, which would have been more than three months after the primary election, a time that they contend they have no jurisdiction to hear them. The three months period provided for in Code 3-7-7, as amended, applies only to hearing procedure, and the time element applicable to determining of contests in primary elections is governed by Code 3-5-20, as amended, which reads as follows: "*Any such contest, or petition for review, of a candidate for a nomination not finally determined within ten days next preceding the date of the next election after the primary * * * shall stand dismissed, * * *.*" (Emphasis supplied.)

It would be senseless to say that the county court did not have jurisdiction to hear a contested election case three months after the date of the primary election when the statute dealing with primary elections specifically gives the county court and appellate courts jurisdiction to finally determine such contested elec-

tion up until " * * * within ten days next preceding the the date of the next election after the primary * * *". Therefore, the wording of the statute with regard to the three months period clearly refers or pertains only to the continuances of hearings in election contest cases in order to require such election contest cases to be completed as soon as possible after the date of the election.

The reason for the three months period is succinctly stated in the case of *Stafford v. County Court,* 58 W. Va. 88, 51 S. E. 2, wherein this Court said: "* * * it is designed to forbid delay and procrastination in the hearing and decision of the case."

The nunc pro tunc order, hereinbefore referred to, attempting to set the terms of court as January, April, July and October, is immaterial for the decision of this case. The validity of the nunc pro tunc order itself can be questioned because there was no memorandum on the records relating back to the first of the year to support the entry of a nunc pro tunc order, *Cameron v. Cameron,* 105 W. Va. 621, 143 S. E. 349, and a nunc pro tunc order may not be entered if the rights of the parties may be adversely affected thereby. *Baker v. Gaskins,* 125 W. Va. 326, 24 S. E. 2d 277. However, the case of *Copley v. Chambers,* 146 W.Va. 674, 123 S.E.2d 232, decided by this Court in 1961, held that it was not necessary for the county court to enter an order fixing the terms of said court each year in order to have legal terms. Orders had been entered in previous years fixing the terms of the County Court of Kanawha County in January, April, July and October, and therefore these terms followed by the county court in 1966, or any future years, would be legal terms for said county court.

We now come to the provisions of the statute, Code 3-7-7, as amended, relating to the time or when the hearings in contested election cases should be heard by the county courts in this state. This provision, which reads in part as follows: "The notice of contest

shall be presented to the county court at its first term after the same is delivered to the person whose election is contested, * * * '' has caused considerable difficulty and has never been specifically clarified by this Court. It has been referred to in several cases decided by this Court over the years. In the case of *Dryden v. Swinburn,* 15 W.Va. 234, it was held that after such notice was served on the contestee such notice should be docketed for trial by the county court when returned to or filed with said court and it then could be set for trial at the next term, but this procedure was questioned at that time by the following language appearing in that case: ''Though their duty to continue the case might well be doubted, as the obvious spirit of the statute is to have the earliest possible trial of the case.'' In the case of *Stafford v. County Court, supra,* dealing with the question involved in this case as to when the hearing in contested election cases should be held, this Court said ''first term'' meant first regular term, not a special term. Then, in the case of *Brawley v. The County Court of Kanawha County,* 117 W.Va. 697, 188 S.E. 139, dealing with the same question, it was stated that in the *Stafford* case the phrase ''the first term after'' implied the *first regular term after* and that since the session on August 1st was not a regular term, the notice could not be lawfully docketed then. However, it disapproved the delayed docketing of the contest for hearing at a regular term of the county court on October 1st because there was an earlier statutory budgetary session of said court then required to be held August 4, (which has now been changed to an earlier date by statute). Accordingly, the Supreme Court required the docketing of the contest forthwith since it might have been done on August 4th. In the case of *Copley v. Chambers, supra,* with regard to the question involved, it was merely stated that the county court acceded to the contention of the respondent that the hearing in a contested election should be set for hearing at the next regular term after the notice was

filed with the court and this question was not presented for decision or determination of this Court in that case.

It is true that it is not clear from the statute as to when a contested election case should be set for hearing by the county court, but all of the cases decided by this Court dealing with election contests, from 1873 in the case of *Loomis v. Jackson,* 6 W.Va. 613, to the present time, are uniform in holding that the hearing or trial in an election contest should be held at the earliest possible time. In the *Loomis* case it was held that it was the intention of a statute dealing with election contests " * * * that every contested election provided for therein, should be commenced and ended within a comparatively short space of time; * * * ". In the case of *Dryden v. Swinburn, supra,* it was clearly stated that the " * * * obvious spirit of the statute is to have the earliest possible trial of the case." In the case of *State ex rel. Staley v. County Court of Wayne County, et al.,* 137 W.Va. 431, 73 S.E.2d 827, the following language appearing in the case of *Nelson v. Nash,* 126 W.Va. 568, 29 S.E.2d 253, was quoted with approval: " 'Evaluation of the foregoing statutes enacted in furtherance of the public policy above mentioned brings the legislative intent into bold relief: *that an election result should be determined and declared with dispatch.* The hearing and determination of an election contest is the last proceeding by which the object of the legislature is attained, and the statutory provision here considered is an overall limitation of the entire process of making returns of election, canvassing thereof, recounting the ballots cast, and contesting the result.' " The *Nash* case involved a general election contest and after the case was docketed for trial, the hearing was continued by the county court by virtue of an agreement of the parties to a date more than three months after the date of the election. It was held that the county court lost jurisdiction to hear the contest. However, in the case at bar the county court refused to hear the contest when the notice of contest

was presented to the court after it had been delivered to the contestee to contest a primary election.

Due to the fact that confusion has arisen in connection with election contest cases, any statement that may be contained in any of the prior decided cases of this Court dealing with such matters not consistent with the decision of this case in connection therewith is disapproved.

The case of *Mullens v. Dunman*, 80 W.Va. 586, 92 S.E. 797, laid down the polar star for guidance in the construction of statutes dealing with election contests in the following language: "Statutes providing for election contests should be liberally construed, in order that the will of the people in the matter of choosing their public officers may not be defeated by merely technical objections."

It should be pointed out that the provision of the statute relating to when election contests should be docketed for trial by the county court provides that after the notice is delivered to the contestee such notice shall then be presented to the county court at its first term.

It is the contention of the respondents that the statute should be construed as if it read the first term of the county court *commencing* after the delivering of the notice of contest to the contestee. The statute does not contain the word *commencing* and the notice can be filed with the county court after it has been delivered to the contestee. *Dryden v. Swinburn, supra.*

In the case of *State v. Mounts*, 36 W.Va. 179, 14 S.E. 407, 15 L.R.A. 243, this Court construed a statute relating to the commencement of the term of office of jury commissioners *after* appointment was made by the circuit court. The statute provided that the term of jury commissioners " * * * shall commence on the 1st day of June next after their appointment * * * ". The Supreme Court held that an appointment made by a circuit judge under this law on the 1st day of June,

1891, conferred upon the appointee the office of jury commissioner, and that his term of office commenced on the 1st day of June, 1891. The only other construction would have resulted in the illogical situation of a term not commencing for four years after an appointment.

In the case of *Sledge v. State,* 269 P. 385, the Supreme Court of the State of Oklahoma construed a statute in that State involving a question almost identical to the one presented in the case at bar. The statute involved provided, in regard to a change of venue, that " * * * the cause must be docketed and stand for trial at the first term of court after the cause has been transferred." It was held in the *Sledge* case that the words "first term of court" meant the immediate term or the present term of court which was in progress at the court to which the case was transferred. In disposing of this question the Oklahoma Court stated: "It is contended by counsel for appellant that the last clause of the above section, 'and the cause must be docketed and stand for trial at the first term of court after the cause has been transferred,' means that a term of court must intervene between the transfer and the trial of the cause, and that the district court of Jefferson City was without jurisdiction to try the cause before the next term after the cause has been transferred.

"We think this contention is without merit. The object in construing statutes is to ascertain the legislative intent. That constitutes the law. If the language be clear, it is conclusive. There can be no construction where there is nothing to construe.

"It is clear that, by the words, 'first term of court,' used in the statute, was meant the term at which the cause was transferred and docketed on the change of venue. Otherwise stated, the words, the 'first term,' means the immediate term, the present term, as contrasted with the phrase, 'next term,' meaning a succeeding term." An identical construction and ruling was made in the case of *Brown v. State,* 273 P. 1018,

which concerned another defendant in connection with the same crime involved in the case of *Sledge v. State, supra.*

It was held in the case of *Nix v. Davis,* 106 Ga. App. 206, 126 S.E.2d 467, that "the first term" as quoted in the statute was the term in which the writ of attachment was returned.

For the reasons stated herein the demurrers to the petitions were overruled and the writs of mandamus were granted compelling the County Court of Kanawha County to forthwith hold hearings at the earliest possible time in order to allow the petitioners the right to contest nominations in the primary election held on May 10, 1966, a right given to them by the laws of this State.

*Writs granted.*

BROWNING, JUDGE, dissenting:

I dissent. It is my opinion that the judicial rule laid down in these cases as to when contested elections may be heard and when notice thereof is to be served is preferable to that provided by the legislature and I would be pleased to go along with the majority in this decision were it not for the provisions of Article V, Section 1 of the constitution of this state which provides, in part, that "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; . . . ." The fixing of the time for the holding of elections and the manner in which recounts, contests, etc., are to be determined, fall wholly within the prerogative power of the legislative branch of the government of this state. With regard to the pertinent question our legislature has spoken clearly and unambiguously. Code, 3-7-7, as amended, provides in part: ". . . The notice of contest shall be presented to the county court at *its first term after* the same is delivered to the person whose election is contested, and the same shall be docketed for trial in such

court. . . ." (Italics supplied.) The phrase, "its first term after" in that section is clear and unambiguous and this Court has no authority under the constitution of this state to interpret it, to construe it, to amend it, or to rewrite it, and in so doing has clearly violated the basic law of this jurisdiction. Even if there had been an ambiguity in this language, this Court could not change what appears to be the obvious meaning without overruling several of its former decisions wherein this language has been construed and found to mean exactly what it says.

In *Stafford v. County Court,* 58 W.Va. 88, 51 S.E. 2, this Court held that the pertinent language of the statute meant the next regular term after the notice of contest was served and not a special term which might be held prior thereto. It is my opinion that *Brawley v. County Court,* 117 W.Va. 697, 188 S.E. 139, is directly in point and that case comes from the same county as the instant ones. Briefly, the facts in that case are these: Brawley and Slack were candidates for the democratic nomination for Sheriff of Kanawha County in the 1936 primary election and, following a recount, Brawley served Slack with a notice of contest on July 22, 1936, which notice stated that the contest would be presented to the county court on August 1, 1936. Then and now the regular terms of the Kanawha County Court began on January 2, April 1, July 1, and October 1. On August 1, Brawley appeared before the county court and moved that the contest be docketed. On August 4, it was refused, the county court stating that the notice could not be docketed until the next regular term of that court which began on October 1, as heretofore stated. Brawley sought a writ of mandamus in this Court directing the county court to accept his notice of contest and docket it for the August session. The writ was awarded but the opinion makes it clear that the county court of Kanawha County was required to accept the notice and hear the case at the August session because at that time the statute pro-

vided for a regular county court "session" beginning on August 1 of each year and that "session" and "term" were synonymous and inasmuch as there was a regular August session provided by law that the contest could be docketed and heard at that session, regardless of the terms fixed by the court itself. However, it is clear from the opinion that this Court interpreted the pertinent statutory language to mean the next regular term and not the same or instant term of a county court. In commenting thereon the Court said: " 'The notice of contest shall be presented to the county court at its first term after the same is delivered to the person whose election (nomination) is contested and the same shall be docketed for trial;' that the statutory phrase, 'the first term after,' has been held in *Stafford v. County Court*, 58 W.Va. 88, 51 S.E. 2, to imply *the first regular term after; . . . .*" *Dryden v. Swinburn*, 15 W.Va. 234, cited by the majority in its opinion is inapplicable since controlling language now contained in Code, 3-7-7, as amended, was not contained in the statute when that case was decided and is therefore not in point.

It is true, as stated in the majority opinion, in quoting from many decisions of this Court, that election results should be determined and declared with dispatch, but none of those cases holds that the constitution of this State should be violated by this Court in order to achieve that purpose. The Court, in its opinion, very clearly states that the controlling question in these cases is whether Code, 3-7-7, as amended, means that the contestants must wait until the next regular term of the county court after they have been served with notices by the contestees or whether such contests may be docketed and heard at a session during which the notices are served and the county court is requested to docket the cases for hearing. The legislature has answered that question in clear and succinct language. This Court has done likewise in its previous decisions. It is my opinion that if the majority sees fit to rewrite the statute and depart from its former decisions then,

at least, it should have overruled such former decisions and said so both in the syllabus and the body of the opinion. We are thus placed in the position again of having two lines of decisions upon a question and I do not think that that is fair to the courts of this state that are bound by the precedents established by this Court.

I would deny the writs of mandamus as requested in the petitions.